FILED
CLERK, U.S. DISTRICT COURT

JUN 24 2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ RS _____ DEPUTY

1  Michael Bernard Potere

2  18 Inis Circle

3  West Newton, MA  02465

4  Phone: (617) 564-1174

5  E-mail: mpotere@nlaw.northwestern.edu

6  *Pro se* Plaintiff

7

8

9

10                **UNITED STATES DISTRICT COURT**

11                **CENTRAL DISTRICT OF CALIFORNIA**

12

13  Michael Bernard Potere,          Case No.: **2:21-CV-05208-JAK-JC**

14          Plaintiff,              **COMPLAINT FOR**

15       vs.                        **DECLARATORY AND**

16  The Board of Trustees of the State Bar   **INJUNCTIVE RELIEF**

17  of California; Donna S. Hershkowitz,

18  Interim Executive Director of The

19  Board of Trustees of the State Bar of

20  California,

21          Defendants.

22

23       Plaintiff MICHAEL B. POTERE ("Plaintiff") hereby sues THE BOARD OF

24  TRUSTEES OF THE STATE BAR OF CALIFORNIA and DONNA S.

25  HERSHKOWITZ, Interim Executive Director of The Board of Trustees of the

26  State Bar of California ("Defendants"), and alleges as follows:

27

28

COMPLAINT

## Introduction

1.      In 2017, the American Bar Association's National Task Force on Lawyer Well-Being issued a widely cited report entitled, "The Path to Lawyer Well-Being: Practical Recommendations for Positive Change" (hereinafter, the "ABA" or "ABA Report").[1]  The ABA emphasized that mental illness is a genuine issue among lawyers, criticizing the stigma that "[m]any [stakeholders] also appear to believe that lawyers' health problems are solely attributable to their own personal failings for which they are solely responsible."[2]  The ABA Report specifically addressed attorney misconduct stemming from mental illness, reporting that, "40 to 70 percent of disciplinary proceedings . . . involve substance use or depression, and often both."[3]

2.      The ABA Report further explained that such an increased risk of exposure to attorney discipline for respondents suffering from depression is because "major depression is associated with impaired executive functioning, including diminished memory, attention, and problem-solving" and "[w]ell-functioning executive capacities are needed to make good decisions and evaluate

---

[1] National Task Force on Lawyer Well-Being, *The Path to Lawyer Well-Being: Practical Recommendations for Positive Change*, (August 14, 2017), https://www.americanbar.org/content/dam/aba/images/abanews/ThePathToLawyer WellBeingReportRevFINAL.pdf.
[2] *Id.* at 12.
[3] *Id.* at 8.

COMPLAINT

risks . . . and cope with new situations."[4]  As such, the ABA recommended that regulators, including bar disciplinary commissions, become more mindful of the mental health issues attorneys face and "transform the profession's perception of regulators from police to partner."[5]  The ABA Report continued by urging regulators to "adopt [disciplinary alternatives] . . . that rehabilitate lawyers with impairments" because "[d]iscipline does not make an ill lawyer well."[6]  Such a rehabilitative disciplinary sanction could allow the attorney to return (or continue) to practice based on "specified conditions that include training, testing, monitoring, and treatment," which would "place[] a lawyer facing a mental health . . . crisis on the path to better client service and a lifetime of greater well-being" and "can change [that] lawyer's life."[7]  Taking action to improve attorney well-being by and through its disciplinary mechanisms would "send a clear message that [California] prioritizes lawyer well-being, which influences competent legal services" and can, in turn, "boost public confidence in the administration of justice."[8]

3.     Defendants have not adopted the ABA's recommendations.

4.     Rather than afford disabled respondents a reasonable opportunity to pursue a rehabilitative disciplinary outcome for misconduct that occurred as a

---

[4] *Id.* at 8.
[5] *Id.* at 25.
[6] *Id.* at 29.
[7] *Id.* at 30.
[8] *Id.* at 26.

COMPLAINT

result of their disability, Defendants have a rule in place that makes it effectively impossible for indigent disabled respondents to prove they even have a disability in the first place.

5.    In California, the Defendants have outlined the ten mitigating factors a respondent may rely upon in attorney disciplinary proceedings in Standard 1.6(a)-(j) in Title IV of the Rules of Procedure of the State Bar of California. (**Exhibit A.**)

6.    Presently at issue is Standard 1.6(d), which provides that, "Mitigating circumstances may include: . . . (d) extreme emotional difficulties or physical or *mental disabilities* suffered by the member at the time of the misconduct and *established by expert testimony* as directly responsible for the misconduct, provided that such difficulties or disabilities were not the product of any illegal conduct by the member, such as illegal drug or substance abuse, and the member established by clear and convincing evidence that the difficulties or disabilities *no longer pose a risk* that the member will commit misconduct[]."  (Emphasis added.)

7.    Standard 1.6(d) is the only mitigating factor that requires expert witness testimony, (*see* **Exhibit A** (Standards 1.6(a)-(c), (e)-(j)), and therefore persons with disabilities are singled out as being the only group of respondents who are required to use expert testimony to establish a mitigating circumstance, and are further required to provide that expert witness at their own expense.

4

8.      California is the only state that requires disabled respondents to hire an expert witness to prove that they have a disability; every other state either models ABA Standard 9.32(i), which requires only "medical evidence," or else has no evidentiary hurdle whatsoever.[9]

9.      Standard 1.6(d)'s heightened evidentiary burden for disabled respondents to prove an element of mitigation in attorney disciplinary proceedings violates their constitutional rights to due process and equal protection, as well as their right to be free from discrimination based on their disability pursuant to the Americans with Disabilities Act.

10.      Standard 1.6(d) further discriminates against respondents with disabilities because it also requires that, to receive any mitigation, a disabled respondent must "establish[] by clear and convincing evidence that the difficulties or disabilities no longer pose a risk that the lawyer will commit misconduct." Under Standard 1.6(d) as written and applied, if a disabled respondent can prove that their misconduct was caused by their mental disability, or that it undermines a finding of specific intent, but cannot also show that they have effectively "recovered" during the arbitrary amount of time between when the misconduct

---

[9] Leslie C. Levin, *The Emperor's Clothes and Other Tales About the Standards for Imposing Lawyer Discipline Sanctions*, 48 AM. U. L. REV. 1, 33–38 and nn.153–174 (1998) (conducting a comprehensive analysis of disciplinary standards throughout the United States and specifically noting on p. 35 n.160 that, "[o]nly California has adopted detailed guidelines for imposing sanctions on lawyers that differ from the ABA Standards").

COMPLAINT

occurred and when the judge makes a ruling, then that disabled attorney is afforded no mitigation for their disability under Standard 1.6(d).  This means that the disabled respondent, who has already proven that they have a mental disability and that it caused their misconduct, is nevertheless being disciplined as if they had no disability at all.  At this point, because the disabled respondent has already established that their misconduct would not have taken place (or taken place to a less culpable degree) *but for* their disability, the respondent's disability *itself* becomes the basis for the disciplinary action, and the respondent is therefore being punished for having a disability.

11.     Plaintiff brings the present action on behalf of himself and those similarly situated and asks this Court to issue a declaratory judgment that Standard 1.6(d) violates the due process and equal protection clauses of the Constitution of the United States, as well as Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101- 12213 (2000), and to correspondingly permanently enjoin Defendant from employing or enforcing Standard 1.6(d), as it is currently written, in the future.

## Jurisdiction and Venue

12.     This action arises under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the United States Constitution and under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*

6

13.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matter in controversy arises under laws of the United States and the United States Constitution.

14.     This Court has the authority to enter a declaratory judgment and to provide permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure; 28 U.S.C. §§ 2201 and 2202; and 15 U.S.C. § 1116.

15.     Venue is proper and the Defendants are subject to the Court's personal jurisdiction pursuant to 28 U.S.C. § 1391 because the events, acts, and omissions giving rise to Plaintiff's claims occurred in Los Angeles, California, which is located in this district.

## **Parties**

16.     Plaintiff Michael Bernard Potere resides in West Newton, Massachusetts.

17.     Defendant The Board of Trustees of the State Bar of California is a California state government agency with offices in Los Angeles, California and San Francisco, California.

18.     Under California Business & Professions Code §§ 6025, 6077, the California Legislature delegated to the Board of Trustees of the State Bar of California complete and exclusive rulemaking authority regarding attorney disciplinary rules and standards in the State of California, as well as the sole

COMPLAINT

discretion to approve or settle claims made against the State Bar of California, pursuant to California Government Code § 900 *et seq.*

19.     Defendant Donna S. Hershkowitz is sued in her official capacity as the Interim Executive Director of the Board of Trustees of the State Bar of California, acting under the color of law, who has the power to ensure the Board's compliance with any injunctive relief ordered by this Court.

20.     Plaintiff has standing to bring this cause of action:

a.     Plaintiff is disabled according to the definition provided by the ADA, which defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities" of the individual in question, 42 U.S.C. § 12102(2), and "mental impairment" includes "[a]ny mental or psychological disorder, such as . . . emotional or mental illness," 29 C.F.R. § 1630.2(h)(2) (1996), which, in turn, includes depression.[10]  Numerous medical professionals have diagnosed Plaintiff as suffering from depression or major depression, and have correspondingly prescribed him with antidepressant medications to treat it.

b.     Plaintiff was harmed by Standard 1.6(d) because he was financially unable to hire an expert witness in his California State Bar Court

---

[10] EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities, Number 915.002, March 25, 1997, *available at* https://www.eeoc.gov/policy/docs/psych.html.

proceedings and, as a direct result, both the Hearing Department and Review Department found that he failed to prove that his mental disability caused his misconduct with the required expert witness testimony.

        c.     Plaintiff does not ask that this Court set aside, reverse, or take any action regarding the decisions made by the California State Bar Court or California Supreme Court in his specific matter.

        d.     Plaintiff seeks prospective relief, and will benefit from a favorable ruling by this Court for two reasons.  First, Plaintiff is entitled to file a petition for reinstatement after five years pursuant to California State Bar Court Rule 5.440 *et seq.*; a finding that Standard 1.6(d) is unconstitutional and subsequently enjoined will impact the nature and outcome of that petition.  Second, Plaintiff has a parallel proceeding pending in Illinois brought by the Attorney Registration and Disciplinary Commission ("ARDC"), which has filed a petition for reciprocal discipline with the Illinois Supreme Court based on the outcome of the California proceedings; a finding that Standard 1.6(d) is unconstitutional and subsequently enjoined will impact the nature and outcome of that petition.

        e.     Plaintiff also seeks prospective and future relief on behalf of those similarly situated.

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Statement of Facts**

21.    Standard 1.6(d) in Title IV of the Rules of Procedure of the State Bar of California provides that, "Mitigating circumstances may include: . . . (d) extreme emotional difficulties or physical or mental disabilities suffered by the member at the time of the misconduct and established by expert testimony as directly responsible for the misconduct, provided that such difficulties or disabilities were not the product of any illegal conduct by the member, such as illegal drug or substance abuse, and the member established by clear and convincing evidence that the difficulties or disabilities no longer pose a risk that the member will commit misconduct[]."

22.    Plaintiff is guilty of committing a nonviolent misdemeanor for which he served five months in federal prison; his California attorney disciplinary proceedings were based on that misdemeanor conviction.

23.    At all relevant times, including when the misconduct resulting in Plaintiff's misdemeanor conviction took place, Plaintiff suffered from major depression.  As a result, Plaintiff was unable to think clearly or fully grasp the nature of his statements or actions.

24.    From the very beginning of his California attorney disciplinary proceedings, Plaintiff attempted to assert in mitigation the defense that his misconduct, while serious, was the result of a major depressive episode.

25.    When Plaintiff's disciplinary matter went to a hearing in July 2019, he was earning $16 per hour working at a men's clothing store and could not afford to hire an expert witness to prove that his disability caused his misconduct, as required by Standard 1.6(d).

26.    At the hearing, Plaintiff raised his Standard 1.6(d) defense, his concerns regarding his inability to pay for an expert, and that he would therefore be unable to prove mental disability as a mitigating factor.  Defendants' response, by and through counsel, was that Plaintiff should have "saved up" to hire an expert during "his incarceration" because "this [was] a train he's seen a-coming for quite some time."

27.    Because he could not afford to hire an expert witness, Plaintiff sought to satisfy Standard 1.6(d) by offering his mental health medical records into evidence.  This included letters and medical records from six of his most recent therapists and psychiatrists: three independently diagnosed Plaintiff with depression, and two separately prescribed him with antidepressant medications.

28.    Defendants' objection, by and through counsel, was that Plaintiff was "attempting to essentially back-door an expert opinion into this case" because "he has not called any experts to testify" and has not himself gone to "medical school."

29.    Moreover, Defendants' counsel argued in objection that the California State Bar Court's Rules of Procedure "require that any evidence regarding experts

be provided to the State Bar within 50 days before trial, and, in fact, there's a very rigorous set of rules that says not only, you know, the names of the doctors, but also their CVs and the basis of their opinions."

30.     Defendants' counsel then concluded that, "[w]e received these expert [*sic*] opinions without any compliance with the State Bar Court's own rules regarding expert opinions, and *we believe it would be error for the Court to rely on opinions that weren't submitted in accord with its own rules*." (Emphasis added.)

31.     Because Plaintiff "failed to provide any evidence from an expert," pursuant to Standard 1.6(d), the State Bar Court Hearing Department rejected his mental disability defense, thereby harming him; the Review Department affirmed this decision.

32.     On information and belief, Defendants, by and through counsel, knew Plaintiff would be unable to hire an expert witness and strategically used Standard 1.6(d) to exclude any evidence of his mental disability, thereby harming him.

33.     On information and belief, Defendants, by and through counsel, have broadly employed Standard 1.6(d) against indigent disabled respondents to prevent them from introducing evidence of their disability or that it caused their misconduct, thereby harming them.

34.     On information and belief, Defendants continue to employ Standard 1.6(d) against indigent disabled respondents to prevent them from introducing

COMPLAINT

evidence of their disability or that it caused their misconduct, having potentially

ruinous consequences for untold numbers of indigent disabled respondents in the

future.

### Count I
*U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983*
*Violation of Right to Procedural Due Process*

35.     Plaintiff realleges and incorporates by reference all of the preceding

paragraphs.

36.     The Fourteenth Amendment's Due Process Clause prohibits states

from "depriv[ing] any person of life, liberty, or property, without due process of

law." U.S. Const. amend. XIV, § 1.

37.     State law governs attorney disciplinary proceedings.

38.     In California, "[t]he right to practice one's profession is sufficiently

precious to surround it with a panoply of legal protection," and because it may not

be taken away "arbitrarily," the "holder is entitled to procedural due process in any

disciplinary proceedings relating thereto." *Emslie v. State Bar*, 11 Cal.3d 210, 226,

228 (1974). In disciplinary proceedings, an attorney has a due process right to a

"fair hearing," *Rosenthal v. State Bar*, 43 Cal.3d 612, 634 (1987), and their license

may be revoked "only on charges alleged and proved and as to which [a]

full . . . opportunity to defend ha[s] been accorded." *Woodard v. State Bar*, 16

Cal.2d 755, 757 (1940).

39.     In disciplinary proceedings, if a disabled respondent's mental illness prevents them from forming the intent required to engage in the alleged misconduct, "then [they] should not be disciplined for the offenses, but should be prohibited from practicing law during the continuance of [their] mental incompetence." *Hyland v. State Bar*, 59 Cal. 2d 765, 774 (1963).

40.     Standard 1.6(d) requires disabled respondents to use expert witness testimony to prove that they have a disability and that it caused their misconduct, and further requires them to provide that expert witness at their own upfront expense.

41.     An attorney disciplinary hearing is not fair and disabled respondents have not been afforded a full opportunity to defend themselves when they are not only held to a higher evidentiary burden than nondisabled respondents, but may also be prevented from putting forth any evidence of their disability whatsoever for the irrelevant reason of poverty.

42.     Disabled respondents are substantially prejudiced when they are unable to satisfy Standard 1.6(d)'s heightened evidentiary burden because a finding that their disability caused their misconduct can undermine a finding of specific intent or moral turpitude, which would necessarily decrease their level of discipline.

COMPLAINT

43.     Standard 1.6(d) further violates disabled respondents' procedural due process rights because it requires them to "establish[] by clear and convincing evidence that the difficulties or disabilities no longer pose a risk that the lawyer will commit misconduct."

44.     The State Bar Court most commonly applies "no longer pose a risk" to mean that the disabled respondent must have "recovered" from their mental disability to receive mitigation under Standard 1.6(d). *E.g.*, *In the Matter of Braun*, 18-N-16608; 18-O-17277, *13 (Pub. Slip. Op., Sept. 18, 2020) (the Review Department declined to award any mitigation to the respondent under Standard 1.6(d) in part because "he has not shown adequate recovery from that condition").

45.     A disabled respondent's disciplinary proceedings cannot be fair if, once they have proven that they have a disability and that it caused their misconduct, they are nevertheless afforded no mitigation because they are unable to show that they have "recovered," and are subsequently punished as if they had no disability and, therefore, because of it.

46.     Standard 1.6(d) on its face and as applied and enforced by the Defendants represents a pattern or practice that violated and continues to violate the federal rights of Plaintiff and those similarly situated, as protected by the Fourteenth Amendment to the United States Constitution and by other federal law.

47.     Unless restrained by the Court, Standard 1.6(d) on its face and as applied and enforced by Defendants will continue to deprive Plaintiff and those similarly situated of rights, privileges, or immunities secured or protected by federal law and the United States Constitution, causing irreparable harm.

## Count II
*U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983*
*Violation of Right to Substantive Due Process*

48.     Plaintiff realleges and incorporates by reference all of the preceding paragraphs.

49.     The Fourteenth Amendment's Due Process Clause prohibits states from "depriv[ing] any person of life, liberty, or property, without due process." U.S. Const. amend. XIV, § 1.

50.     Standard 1.6(d) affected and continues to affect the economic rights and liberties of Plaintiff and those similarly situated by requiring disabled respondents to use expert witness testimony to prove that they have a disability and that it caused their misconduct, and further requires them to provide that expert witness at their own upfront expense.

51.     When a disabled respondent is unable to provide Standard 1.6(d)'s required expert witness testimony, mitigating evidence of their disability is completely excluded from their disciplinary proceedings, and they are punished as if they had no disability whatsoever.

COMPLAINT

52.     A disabled respondent's punishment in the absence of mitigating evidence of their disability can be the loss of their license to practice the law in California, depriving them of life, liberty, and property.

53.     Every other state is able to competently entertain evidence of a respondent's disability and whether or not it caused their misconduct without requiring expert witness testimony.

54.     Defendants' deprivation of life, liberty, and property on the basis of both a respondent's disability and their prior accumulated wealth is therefore not rationally related to any legitimate government purpose.

55.     Standard 1.6(d) on its face and as applied and enforced by the Defendants represents a pattern or practice that violated and continues to violate the federal rights of Plaintiff and those similarly situated, as protected by the Fourteenth Amendment to the United States Constitution and by other federal law.

56.     Unless restrained by the Court, Standard 1.6(d) on its face and as applied and enforced by Defendants will continue to deprive Plaintiff and those similarly situated of rights, privileges, or immunities secured or protected by federal law and the United States Constitution, causing irreparable harm.

COMPLAINT

## **Count III**
*U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983*
*Violation of Right to Equal Protection*

57.    Plaintiff realleges and incorporates by reference all of the preceding paragraphs.

58.    The Fourteenth Amendment's Equal Protection Clause provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; [ ] nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

59.    Standard 1.6(d) requires disabled respondents to use expert witness testimony to prove that they have a disability and that it caused their misconduct, and further requires them to provide that expert witness at their own upfront expense.

60.    On its face, Standard 1.6(d) draws distinctions among respondents in California disciplinary proceedings based on disability and poverty.  First, it distinguishes between disabled and nondisabled respondents by requiring only disabled respondents to prove an element of mitigation using expert witness testimony.  Second, it further distinguishes between disabled respondents by those who are able to pay an expert witness to provide the required testimony, and those who are not.

61.     Because every other state is able to competently entertain evidence of a respondent's disability and whether or not it caused their misconduct without requiring expert witness testimony, Standard 1.6(d)'s expert witness requirement is not rationally related to a legitimate government purpose.

62.     Further distinguishing between disabled respondents on the basis of poverty is also not rationally related to a legitimate government purpose because it bases the exclusion of permissible mitigating evidence of a respondent's disability on their financial status, which is, by itself, irrelevant to: the respondent's misconduct, whether or not their disability caused it, and their appropriate level of discipline.

63.     Standard 1.6(d) on its face and as applied and enforced by the Defendants represents a pattern or practice that violated and continues to violate the federal rights of Plaintiff and those similarly situated, as protected by the Fourteenth Amendment to the United States Constitution and by other federal law.

64.     Unless restrained by the Court, Standard 1.6(d) on its face and as applied and enforced by Defendants will continue to deprive Plaintiff and those similarly situated of rights, privileges, or immunities secured or protected by federal law and the United States Constitution, causing irreparable harm.

COMPLAINT

## **Count V**
*Violation of Title II of the Americans with Disabilities Act*
*42 U.S.C. § 12131 et seq.*

65.     Plaintiff realleges and incorporates by reference all of the preceding

paragraphs.

66.     The Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213,

guarantees qualified individuals an equal opportunity to access the benefits of the

services, programs, or activities of a public entity.  42 U.S.C. § 12132.

67.     Title II of the ADA mandates, *inter alia*, that "no qualified individual

with a disability shall, by reason of such disability, be excluded from participation

in or be denied the benefits of the services, programs, or activities of a public

entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

68.     To that end, "[a] public entity may not administer a licensing or

certification program in a manner that subjects qualified individuals with

disabilities to discrimination on the basis of disability, nor may a public entity

establish requirements for the programs or activities of licensees or certified

entities that subject qualified individuals with disabilities to discrimination on the

basis of disability."  28 C.F.R. § 35.130(b)(6).

69.     Moreover, "[a] public entity may not place a surcharge on a particular

individual with a disability or any group of individuals with disabilities to cover

the costs of measures, such as the provision of auxiliary aids or program

accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part."  28 C.F.R. § 35.130(f).

70.    Defendants operate an agency of the State of California, authorized by statute, which is a public entity under Title II of the ADA.

71.    Attorney licensing and disciplinary proceedings are a service, program, or activity provided by Defendants.

72.    Plaintiff is an individual with disabilities under the ADA because his treating medical professionals have diagnosed him with major depression.

73.    Plaintiff and others similarly situated are California attorneys subject to licensing, registration, and discipline by Defendants, and are thus qualified individuals entitled to the protections of the ADA.

74.    Standard 1.6(d) requires disabled respondents to use expert witness testimony to prove that they have a disability and that it caused their misconduct, and further requires them to provide that expert witness at their own upfront expense; no such requirements or evidentiary hurdles or limitations are placed on nondisabled respondents.

75.    As a result of Standard 1.6(d), on its face and as applied and enforced by Defendants, disabled respondents who cannot afford to hire an expert witness

are unable to prove that they have a disability and that it caused their misconduct, the result of which could be the loss of their license to practice law.

76.     Standard 1.6(d) further singles out disabled respondents as being required to "establish[] by clear and convincing evidence that the difficulties or disabilities no longer pose a risk that the lawyer will commit misconduct."

77.     As such, once they have proven that they have a disability and that it caused their misconduct, disabled respondents may nevertheless be afforded no mitigation because they are unable to show that they have "recovered" during the arbitrary amount of time between their alleged misconduct and their hearing, and are subsequently punished as if they had no disability and, therefore, because of it. The result of this could be the loss of their license to practice law.

78.     Standard 1.6(d) on its face and as applied and enforced by Defendants, has failed to meet Defendants' obligations to administer California's attorney licensing or certification program, by and through attorney disciplinary proceedings, in a manner that does not subject qualified individuals with disabilities to discrimination on the basis of their disability.

79.     Standard 1.6(d) on its face and as applied and enforced by Defendants, has further failed to meet Defendants' obligations to avoid establishing requirements for the programs or activities of licensees, by and

through California's attorney disciplinary proceedings, that subject qualified individuals with disabilities to discrimination on the basis of disability.

80.   In requiring disabled respondents to provide expert witness testimony at their own expense, Defendants have also placed a surcharge on particular individuals with disabilities to cover the costs of measures, such as the provision of program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the ADA.

81.   Defendants have therefore failed to provide access to California attorney disciplinary proceedings for respondents with disabilities that is equal to the opportunity provided to nondisabled respondents.  Accordingly, Defendants have excluded and continue to exclude Plaintiff and those similarly situated from participation in, and have denied and will continue to deny them the benefits of or otherwise discriminate against them in, its service, program, or activity of California attorney licensing and disciplinary proceedings.

82.   As a result of Defendants' actions, Plaintiff and those similarly situated have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to Defendants' programs, services, or activities in the form of California attorney licensing and disciplinary proceedings.

83.    Defendants' failure to meet its obligations to provide disabled respondents with an equal opportunity to participate in California attorney disciplinary proceeding is an ongoing and continuous violation of the ADA and its supporting regulations.  Unless restrained from doing so, Defendants will continue to violate the ADA.  Unless enjoined, Defendants' conduct will continue to inflict injuries for which Plaintiff and those similarly situated, who have no adequate remedy at law.

84.    The requested equitable relief regarding Standard 1.6(d) could be implemented with minimal cost and would not fundamentally alter Defendants' programs and services.

85.    The ADA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities. 42 U.S.C. § 12188(a)(1).

86.    Plaintiff and those similarly situated are entitled to the requested injunctive relief.

## **Request for Relief**

WHEREFORE, the Plaintiff requests that this Court enter judgment in his favor and award the following relief:

1.    A declaration that Standard 1.6(d), on its face and by and through its enforcement and application by Defendants, has and continues to violate the

COMPLAINT

1   Fourteenth Amendment to the United States Constitution and the Americans with

2   Disabilities Act;

3
4          2.     A permanent injunction prohibiting Defendants from enforcing and

5   applying Standard 1.6(d), as it is currently written, in California attorney

6   disciplinary proceedings; and

7
8          3.     All other relief that this Honorable Court deems just and proper.

9

10

11  Respectfully submitted,

12  Dated:      June 24, 2021                    MICHAEL B. POTERE

13

14                                              By:

15                                                   MICHAEL B. POTERE

16                                              Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

25
COMPLAINT

# EXHIBIT A

(l)      lack of candor and cooperation to the victims of the misconduct or to the State Bar during
         disciplinary investigations or proceedings;

(m)      failure to make restitution; or

(n)      high level of vulnerability of the victim.

Eff.  January 1, 1986.  Revised: January 1, 2007; January 1, 2014; July 1, 2015.

## 1.6 MITIGATING CIRCUMSTANCES

A lawyer must establish mitigating circumstances by clear and convincing evidence.  Mitigating
circumstances may include:

(a)      absence of any prior record of discipline over many years of practice coupled with present
         misconduct, which is not likely to recur;

(b)      good faith belief that is honestly held and objectively reasonable;

(c)      lack of harm to the client, the public, or the administration of justice;

(d)      extreme emotional difficulties or physical or mental disabilities suffered by the lawyer at
         the time of the misconduct and established by expert testimony as directly responsible for
         the misconduct, provided that such difficulties or disabilities were not the product of any
         illegal conduct by the lawyer, such as illegal drug or substance abuse, and the  lawyer
         established by clear and convincing evidence that the difficulties or disabilities  no longer
         pose a risk that the lawyer will commit misconduct;

(e)      spontaneous candor and cooperation displayed to the victims of the misconduct or to the
         State Bar;

(f)      extraordinary good character attested to by a wide range of references in the legal and
         general communities, who are aware of the full extent of the misconduct;

(g)      prompt objective steps, demonstrating spontaneous remorse and recognition of the
         wrongdoing and timely atonement;

(h)      remoteness in time of the misconduct and subsequent rehabilitation;

(i)      excessive delay by the State Bar in conducting disciplinary proceedings causing prejudice
         to the lawyer; or

(j)      restitution was made without the threat or force of administrative, disciplinary, civil or
         criminal proceedings.

Eff.  January 1, 1986.  Revised: January 1, 2014; July 1, 2015; January 25, 2019.