1   Michael Bernard Potere
2   18 Inis Circle
    West Newton, MA  02465
3   Phone: (617) 564-1174
    E-mail: mpotere@nlaw.northwestern.edu
4   *Pro se* Plaintiff
5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10

11  MICHAEL BERNARD POTERE,              Case No.: 2:21-cv-05208-JAK-JC

12              Plaintiff,               **PLAINTIFF'S RESPONSE TO**
                                         **DEFENDANTS' MOTION TO**
13       vs.                            **DISMISS FIRST AMENDED**
                                         **COMPLAINT**
14
    THE BOARD OF TRUSTEES OF
15  THE STATE BAR OF CALIFORNIA;
    LEAH WILSON, EXECUTIVE              Date
16  DIRECTOR OF THE BOARD OF            Time:
    TRUSTEES OF THE STATE BAR OF        Courtroom:
17  CALIFORNIA,                         Magistrate Judge:    Hon. Jacqueline
                                                             Chooljian
18              Defendants.

19

20

21

22

23

24

25

26

27

28

---

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

# <u>Table of Contents</u>

Table of Contents.................................................................................................. i

Table of Authorities ............................................................................................. ii

I.   Introduction ................................................................................................ 1

II.   Plaintiff Has Established Subject-Matter Jurisdiction. ...................... 4

   A.   Plaintiff's Claims are not "Moot."........................................................ 7

   B.   Plaintiff's Injury is "Imminent."............................................................ 9

III.   Plaintiff's Claims are Redressable. .................................................... 14

   A.   Dismissal Based on the Pleadings is Disfavored........................... 15

   B.   Plaintiff's Claims are not Precluded. ............................................. 16

     1.   Plaintiff's Claims are not Identical.............................................. 17

     2.   Plaintiff's Claims were not Adequately Litigated. ..................... 19

     3.   Exceptions to *Res Judicata* Prevent its Application Here. ....... 22

IV.   Conclusion................................................................................................ 24

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1
2

# **Table of Authorities**

3
4

<u>Cases</u>

5
6

*Arcadia Unified School Dist. v. State Dept. of Educ.*, 2 Cal.4th 251 (1992)... 17, 22, 23, 24

7

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).......... 5, 13

8

*Boddie v. Connecticut*, 401 U.S. 371, 377-83 (1971) ............................................. 18

9

*Canatella v. State of California*, 304 F.3d 843 (9th Cir. 2002) .................. 12, 13, 14

10

*Christensen v. C.I.R.*, 786 F.2d 1382, 1384-85 (9th Cir.1986)............................... 15

11

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .................................................. 24

12

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983).................... 7, 17, 22

13

*Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988).....................................passim

14

*Erickson v. Pardus*, 551 U.S. 89 (2007) ................................................................ 15

15

*Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1124-25 (9th Cir. 2002) ...... 16

16

*Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)..................................................... 15

17

*In re Glass*, 58 Cal.4th 500 (2014) .......................................................................... 8

18

*In re Menna*, 11 Cal.4th 975, 990 (1995) ................................................................. 6

19

*In re Rose*, 22 Cal.4th 430, 460 (2000).................................................................. 21

20

*In the Matter of Brown*, 2 Cal. State Bar Ct. Rptr. 309, 319 (Review Dept. 1993).. 6

21

*Louis Stores, Inc. v. Department of Alcoholic Beverage Control*, 57 Cal.2d 749, 757-758 (1962) .................................................................................... 22, 23

22
23

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) ................................ 4, 9, 10

24

*O'Shea v. Littleton*, 414 U. S. 488, 494 (1974) ...................................................... 10

25

*Partington v. Gedan*, 961 F.2d 852 (9th Cir. 1992)................................................ 11

26

*People v. Sims*, 32 Cal.3d 468 (1982)..................................................................... 16

27

*Ramos v. Cal. Comm. of Bar Examiners Of State Bar*, 857 F. Supp. 702, 704 (N.D. Cal. 1994).................................................................................................. 15

28

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923) ................................. 22

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2314 (2014)...................... 10

*United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966) .............. 16

*Usher v. Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) ................................. 11

*Warth v. Seldin,* 422 U.S. 490, 499 (1975)........................................................ 10

*Younger v. Harris*, 401 U.S. 37 (1971)................................................................ 24

Statutes

42 U.S.C. §§ 12101- 12213 (2000)....................................................................... 3

Rules

5.445(A) ................................................................................................................. 6

California Rule of Professional Conduct 3.3(a)(2) .............................................. 14

FRCP 12(b)(1) ................................................................................................... 3, 4

FRCP 12(b)(6) ................................................................................................. 3, 15

FRCP 8(f) ............................................................................................................ 15

Illinois Rule 767..................................................................................................... 7

Illinois Rule 771..................................................................................................... 7

Rule 5.440 .................................................................................................... 4, 7, 12

Rule 5.446(A) ........................................................................................................ 4

Standard 1.1 ........................................................................................................... 4

Standard 1.6(d) ........................................................................................ 1, 4, 5, 8

Constitutional Provisions

Cal. Const. art III § 3.5 ........................................................................................ 21

iii

I.   **Introduction**

The stigma surrounding mental health in the legal community seems insurmountable.  In 1986, the Defendants (collectively, the "State Bar") implemented a rule requiring disabled respondents in attorney disciplinary proceedings to hire an expert witness to prove their disability in mitigation, presently labeled Standard 1.6(d).  Implicit in this rule is the antiquated view that a "wayward" attorney might "fake" a mental illness to lessen their discipline. Although a lot has changed in the past three decades, attorneys struggling with mental illness continue to face an uphill battle in having their conditions recognized and properly addressed by state bar prosecutors and judges.

In 2017, the American Bar Association's National Task Force on Lawyer Well-Being issued a widely cited report entitled, "The Path to Lawyer Well-Being: Practical Recommendations for Positive Change" (hereinafter, the "ABA" or "ABA Report").[1]  The ABA emphasized that mental illness is a genuine issue among lawyers, criticizing the stigma that "[m]any [stakeholders] also appear to believe that lawyers' health problems are solely attributable to their own personal failings for which they are solely responsible."[2]  The ABA Report specifically

---

[1] National Task Force on Lawyer Well-Being, *The Path to Lawyer Well-Being: Practical Recommendations for Positive Change*, (August 14, 2017), https://www.americanbar.org/content/dam/aba/images/abanews/ThePathToLawyer WellBeingReportRevFINAL.pdf.
[2] *Id.* at 12.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

addressed attorney misconduct stemming from mental illness, reporting that, "40 to 70 percent of disciplinary proceedings . . . involve substance use or depression, and often both."[3]  The ABA Report further explained that such an increased risk of exposure to attorney discipline for respondents suffering from depression is because "major depression is associated with impaired executive functioning, including diminished memory, attention, and problem-solving" and "[w]ell-functioning executive capacities are needed to make good decisions and evaluate risks . . . and cope with new situations."[4]

Despite the growing evidence of the statistical improbability that an attorney seeking mitigation due to their mental illness is "faking it," the State Bar has failed to update its rule.  In fact, California is the only state that requires disabled respondents to hire an expert witness to prove that they have a disability; every other state either models ABA Standard 9.32(i), which requires only "medical evidence," or else has no evidentiary hurdle whatsoever.[5]  And in so doing, the California State Bar stands alone in singling out persons with disabilities as being the only group of respondents who are required to use expert testimony to establish

---

[3] *Id.* at 8.

[4] *Id.* at 8.

[5] Leslie C. Levin, *The Emperor's Clothes and Other Tales About the Standards for Imposing Lawyer Discipline Sanctions*, 48 Am. U. L. Rev. 1, 33–38 and nn.153–174 (1998) (conducting a comprehensive analysis of disciplinary standards throughout the United States and specifically noting on p. 35 n.160 that, "[o]nly California has adopted detailed guidelines for imposing sanctions on lawyers that differ from the ABA Standards").

2

a mitigating circumstance, and are further required to provide that expert witness at their own upfront expense.

The State Bar's disparate treatment of disabled respondents is not only patently and facially unconstitutional (violating their rights to substantive and procedural due process, as well as equal protection), but it is also a clear infringement of their right to be free from discrimination under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101- 12213 (2000). Having been harmed by this rule in his own disciplinary proceedings and facing future injury by the same in his reinstatement proceedings, Plaintiff brings the present lawsuit, which generally challenges the rule's validity under federal law, on behalf of himself and those similarly situated.

In response to Plaintiff's First Amended Complaint ("FAC"), the State Bar filed a Motion to Dismiss Plaintiff's First Amended Complaint ("MTD").[6]  The State Bar raises three arguments in support: first, Plaintiff lacks standing under FRCP 12(b)(1) due to "mootness;" second, Plaintiff lacks standing to sue because the threat of future injury is not "imminent;" and third, Plaintiff's suit is barred under the doctrine of *res judicata* and FRCP 12(b)(6).  As discussed below, each of these arguments fail; this Court should therefore deny the State Bar's MTD.

---

[6] Plaintiff does not object to this Court taking judicial notice of Exhibits 1 through 9 contained in Docket 19, pursuant to Federal Rule of Evidence 201; Plaintiff reserves the right to object to any future requests for judicial notice.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.   **Plaintiff Has Established Subject-Matter Jurisdiction.**

Under the three-prong test articulated by the Supreme Court in *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992), standing is established with: (1) an injury or harm that is (a) concrete and particularized and (b) actual or imminent; (2) a "causal connection between the injury and the conduct;" and (3) the injury or harm would be "redressed by a favorable decision."  The State Bar's FRCP 12(b)(1) argument is that Plaintiff lacks standing because his claims are "moot" and the harm he would suffer from future enforcement of Standard 1.6(d)'s evidentiary burden is not "imminent;" it does not challenge Plaintiff's claims under *Lujan* prongs (1)(a) (injury or harm) or (2) (causal connection).

Plaintiff filed a First Amended Complaint ("FAC") pursuant to FRCP 15(a)(1)(B) on September 4, 2021, wherein he expands upon paragraph 20(d) to include subparagraphs (i) and (ii).  (FAC at 9-11.)  First, FAC paragraph 20(d)(i) states that: Plaintiff is entitled to petition for a disbarment reinstatement proceeding pursuant to Rule 5.440 *et seq.*; he intends to do so at the earliest available opportunity, on or around March 30, 2026; Standard 1.6(d) will apply to those reinstatement proceedings pursuant to Rule 5.446(A) and Standard 1.1; and a favorable ruling by this Court will remove Standard 1.6(d)'s expert witness evidentiary burden from those proceedings, which would otherwise apply to Plaintiff.  (FAC at 9-10.)

California State Bar Rule 5.446(A) states that, "The following rules do not apply in a reinstatement proceeding: (A) General. Rules that by their terms apply only to disciplinary proceedings or to other specific proceedings . . . ." This interacts with Standard 1.1, which states that, "The Standards do not apply to: non-disciplinary dispositions such as admonitions and agreements in lieu of discipline; resignations; involuntary inactive enrollments; interim suspensions after conviction of a crime; or suspensions for nonpayment of State Bar fees, failure to comply with child support orders, or tax delinquencies." Because Standard 1.1 does not expressly exclude disbarment reinstatement proceedings, the State Bar Court may use the Standards—including Standard 1.6(d)—in determining the outcome of Plaintiff's reinstatement petition.

Despite its label, Standard 1.6(d) operates as a rule of evidence.[7] (*Cf.* MTD at 9 n.4.) The substance of this Court's favorable decision would be that it is unconstitutional and a violation of federal law to require disabled respondents to prove their disability using expert witness testimony, and to provide that expert at their own expense. Disabled respondents would therefore be able to present evidence of—and subsequently prove—their disability without expert witness

---

[7] The State Bar cannot argue that Plaintiff lacks standing because the State Bar Court might apply a different evidentiary burden at his reinstatement proceedings because Plaintiff "does not have to await the consummation of threatened injury before challenging a statute." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

testimony in any State Bar Court ("SBC") proceeding, including disbarment reinstatement proceedings. Because of this general applicability, the SBC could not attempt to evade this Court's ruling by simply failing to cite to Standard 1.6(d): it would be prohibited from dismissing a respondent/petitioner's disability defense in any proceeding because it is unsupported by expert witness testimony. And, in light of this Court's favorable ruling, the State Bar and OCTC would know to not even attempt such a position.

At Plaintiff's reinstatement proceedings, he will bear the burden of proof to "establish [his] rehabilitation" and "establish [his] present moral qualifications for reinstatement," pursuant to Rule 5.445(A)(2)-(3). Plaintiff's mental disability will be directly at issue during his reinstatement proceedings because he will argue that although his disability caused his misconduct, he has recovered such that he is rehabilitated and possesses the ability and moral qualifications to resume the practice of law. But as it currently stands, Plaintiff will be unable to prove his mental disability in defense without expert witness testimony. *See, e.g.*, *In re Menna*, 11 Cal.4th 975, 990 (1995) (approvingly citing "the expert testimony of two of [petitioner's] treating psychologists"); *In the Matter of Brown*, 2 Cal. State Bar Ct. Rptr. 309, 319 (Review Dept. 1993) ("We also give significant weight to the testimony by the psychologist . . . ."). A favorable decision by this Court will change that.

Second, FAC paragraph 20(d)(ii) discusses Plaintiff's parallel proceeding in Illinois.  (FAC at 10-11.)  Although the Illinois Supreme Court denied Plaintiff's request for a hearing and granted the Illinois Attorney Registration and Disciplinary Commission's ("ARDC") petition for reciprocal discipline on September 23, 2021, on this Court's favorable ruling, he will promptly pursue all avenues for reconsideration and appeal, including but not limited to motions permitted by Illinois Rule 771 or, as a last resort, a petition for reinstatement pursuant to Illinois Rule 767 (listing procedures for reinstatement that are similar to California Rule 5.440 *et seq.*).

## A.    Plaintiff's Claims are not "Moot."

At the outset, it bears emphasis that the Supreme Court's decision in *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983) expressly grants subject-matter jurisdiction "over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case."  (*See also* MTD at 4 n.2.)  As such, Plaintiff's claims cannot be "moot" for the purpose of challenging standing just because this Court lacks the power to alter his disciplinary outcome, which is not the relief Plaintiff seeks from this Court.  (FAC at 25-26.)  The State Bar cites to no authority contradicting *Feldman* on this point; its argument that this Court lacks subject-matter jurisdiction because it cannot "un-disbar" Plaintiff is a nonstarter.

Instead, Plaintiff is asking this Court to declare Standard 1.6(d)'s evidentiary burden unconstitutional and enjoin its future use against him during his California reinstatement proceedings, and more importantly, to end its use as a weapon to prevent indigent disabled respondents from effectively presenting evidence of their disability in mitigation.  Here, Plaintiff is seeking not only a declaration, but also an injunction.  (*See* MTD at 6-7.)  A favorable order both "would . . . have an[] effect on Plaintiff's disbarment," (MTD at 7), because it would enjoin the expert witness testimony requirement and allow him to present evidence of his disability during his reinstatement proceedings without having it dismissed or excluded as unsupported by the same.

Moreover, the State Bar will likely argue for an enhanced level of scrutiny at Plaintiff's reinstatement proceedings due to the alleged severity of Plaintiff's underlying misconduct.  *See, e.g.*, *In re Glass*, 58 Cal.4th 500 (2014).  Plaintiff's response will continue to be that his misconduct arose during a major depressive episode and as a result of his disability.  A favorable ruling by this Court would declare Standard 1.6(d) unconstitutional and enjoin its future use, and in light thereof, Plaintiff will ask the SBC judge presiding over his reinstatement proceedings to reconsider evidence of his disability at the time of his misconduct, and to correspondingly reevaluate the weight it assigns to its severity as it pertains specifically to his reinstatement.

But Plaintiff is not launching a "collateral attack."  Rather, Plaintiff's claims before this Court seek to enjoin the use of an unconstitutional rule of evidence; Plaintiff will argue what impact this Court's favorable ruling should have on the outcome of his reinstatement proceedings before the State Bar Court itself.  The SBC—and not this Court—will therefore still be responsible for the ultimate substantive determination in Plaintiff's California disciplinary matter.  The practical outcome of this Court's favorable ruling will be that any lack of expert witness testimony at Plaintiff's reinstatement proceedings will not serve as a preemptive and absolute bar to the full consideration of his evidence.  But this Court's ruling will not dictate the outcome of those proceedings: the SBC could nevertheless decide that Plaintiff has failed to demonstrate his mental disability in mitigation.  And in light of this Court's favorable ruling, whatever decision the SBC does make will be based on the weight of Plaintiff's other evidence, and not entirely excluded because he was unable to furnish expert witness testimony.

**B.    Plaintiff's Injury is "Imminent."**

The State Bar next contends that Plaintiff's reinstatement proceedings are not "imminent" because they will not take place for five years.  (MTD at 8-9.)  But this skirts the full rule statement in *Lujan*, which continues with a widely cited footnote clarifying that "imminent" is an "elastic concept" that also means "certainly impending."  *Id.* at 562 n.2.  This can be satisfied when there is a

"substantial risk that harm will occur" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2314 (2014), when there is a "threatened injury," *Warth v. Seldin,* 422 U.S. 490, 499 (1975), or when there is a "realistic danger" of injury. *O'Shea v. Littleton*, 414 U. S. 488, 494 (1974). Contrary to the State Bar's narrowed rule statement, "imminent" does not only mean "about to be enforced." (MTD at 8.)

*Lujan* itself discusses scenarios in which plaintiffs could allege facts that satisfy imminence. The *Lujan* plaintiffs sought review of a federal rule regarding the Endangered Species Act that they argued would lead to the loss of various species of animals. 504 U.S. at 558-59. To establish standing, the plaintiffs argued that they generally wanted to visit these animals again, but would be unable to do so because enforcement of the rule would lead to the loss of these certain species. *Id.* at 564. Further clarifying the specificity necessary to establish standing, the *Lujan* Court held that, "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id.* at 564 (emphasis in original). Notably, no timeframe is set.

Plaintiff's FAC addresses this by unambiguously stating that he intends to file a petition for reinstatement based on this Court's favorable ruling when he is first able to do so, on or around March 30, 2026, (FAC at 9-10, ¶20(d)(i)). This Court must accept this statement as true and construe it in his favor. *Usher v. Los*

*Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Thus, Plaintiff provides "specification of when" the injury will occur, *Lujan*, 504 U.S. at 564; his reinstatement proceedings are therefore "certainly impeding," *id.* at 562 n.2, and the future enforcement of the expert witness requirement is "threatened," creating a "realistic" and "substantial risk" that Plaintiff will be harmed by it again.

The State Bar relies on *Partington v. Gedan*, 961 F.2d 852 (9th Cir. 1992), as the primary authority in support of its position. In relevant part, Partington's federal action was based on a $50 fine levied against him by the Hawaii Supreme Court for missing a filing deadline in a criminal appeal. *Id.* at 857. The *Partington* court's "actual or imminent" analysis concerned Partington's claim seeking "[an] injunction restraining the [Hawaii Supreme Court] from 'sanctioning, accusing, or making findings of unprofessional conduct' without affording Partington 'prior notice and an opportunity to be heard.'" *Id.* at 859. It was in this context that the court noted Partington's claim was "little more than a request for the Hawaii Supreme Court to comply with the rights of due process in the future." *Id.* at 862. The Ninth Circuit upheld the lower court's dismissal for lack of subject-matter jurisdiction because Partington "failed to articulate the likelihood that the Hawaii Supreme Court will mistreat [him] in the future" and that "[w]ithout such a concrete likelihood, the case or controversy requirement cannot be met." *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Where the *Partington* plaintiff sought an injunction against future injury without specifying what the injury might be or when it would take place, the Plaintiff's FAC clearly denotes the identifiable events of his reinstatement proceedings and specifically describes that he will again be injured by being unable to offer evidence of his disability without expert witness testimony.  (FAC at 9-10, ¶20(d)(i).)  Moreover, the Plaintiff's FAC directly identifies the evidentiary rule he is challenging, (FAC at *passim*), whereas Partington asked for blanket relief for any and every action that might be taken against him by the Hawaii Supreme Court.  Given that Plaintiff is entitled to petition for reinstatement as of right, Rule 5.440 *et seq.*, the State Bar's position that he "will not have any future disciplinary proceedings against him" is nonsensical.  (MTD at 8.)

Despite being a party thereto, the State Bar fails to cite to *Canatella v. State of California*, 304 F.3d 843 (9th Cir. 2002).  The plaintiff in *Canatella* was a California attorney sanctioned by state and federal courts on twenty-six occasions and subsequently saw the State Bar initiate a disciplinary investigation against him.  *Id.* at 847-48.  In response, Canatella filed a federal lawsuit challenging the provisions utilized in his State Bar proceedings as unconstitutional, and sought an injunction against the State Bar from taking further action against him under those provisions, as well as a declaration that they were unconstitutional.  *Id.* at 848.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Although Canatella did not specify when or in what manner he might be subjected to future State Bar discipline, the Ninth Circuit held that he had standing to sue. First, it noted that Canatella had been disciplined under the provisions at issue in the past and indicated that he would not refrain from engaging in the same conduct in the future, and likewise that the State Bar did not concede that it would refrain from pursuing discipline against him for the same. *Id.* at 852-53. The court therefore determined that, "the parties remain philosophically on a collision course . . . [and] there is a strong likelihood Canatella may again face discipline under the challenged provisions." *Id.* at 853. It continued that Canatella's "threat of future prosecution is not merely hypothetical and conjectural, but actual" and that "we have no reason to doubt that Canatella's interactions with the State Bar heretofore do not have at least some continuing, present adverse effects." *Id.* (citations omitted). The *Canatella* court continues by concluding that, "While Canatella is not currently involved in disciplinary proceedings, it cannot be said that [his] fear of facing future disciplinary proceedings is 'imaginative and wholly speculative.'" *Id.* at 855 (quoting *Babbitt*, 442 U.S. at 289). Therefore, Canatella's "claims do not arise in a factual vacuum and are sufficiently framed to render them fit for judicial decision." *Id.*

Where the Ninth Circuit in *Canatella* granted the plaintiff subject-matter jurisdiction based on the fact that he had previously engaged in specific conduct,

that he would likely engage in that conduct again (inferred from the negative statement that Partington "has nowhere conceded he will refrain"), and that the State Bar would likely pursue disciplinary charges against him based on that conduct (also inferred from the negative), *id.* at 853, here the Plaintiff has stated a concrete action (reinstatement proceedings) at a concrete time (when he is first able to do so).  It simply cannot be said that Plaintiff's clearly stated intention to file a petition for reinstatement is in any way more tenuous than Canatella's, where the plaintiff has-not-said-he-would-not engage in conduct and the State Bar has-not-said-it-would-not consequently pursue disciplinary action against him.[8]

## III.   **Plaintiff's Claims are Redressable.**

The State Bar's position that Plaintiff fails to state a claim because he is attempting to "re-litigate" the same issues presented in his disciplinary proceeding must also fail.  First, the context in which his constitutional arguments were previously considered pertained specifically to the facts of the Plaintiff's matter, and not the general validity of the expert witness requirement under the constitution and federal law.  Second, even if the claims were identical (they were not), this Court should decline to apply the principle of *res judicata* because

---

[8] California Rule of Professional Conduct 3.3(a)(2) requires lawyers to disclose adverse precedent that they reasonably should know about.  Despite being a party to the case, the State Bar failed to cite *Canatella* in its MTD.  In fact, the case was briefed and argued by the "Office of the General Counsel, The State Bar of California," 304 F.3d at 845, which also represents the State Bar here.  Plaintiff respectfully asks that this Court interpret this omission with an adverse inference.

Plaintiff did not have an "adequate opportunity to litigate" his claims, and in either event, because the "injustice" and "public interest" exceptions to *res judicata* preclude its application here.

### A.    Dismissal Based on the Pleadings is Disfavored.

Documents filed by *pro se* litigants must be "liberally construed," and a *pro se* plaintiff's complaint, "however inartfully pleaded, must be held to less stringent standards" than those drafted by plaintiffs represented by counsel. *Erickson v. Pardus*, 551 U.S. 89 (2007).  This is particularly true when civil rights claims are involved. *Christensen v. C.I.R.*, 786 F.2d 1382, 1384-85 (9th Cir.1986); *see also* FRCP 8(f) ("All pleadings shall be so construed as to do substantial justice"). Therefore, the Court should not dismiss a *pro se* litigant's claims based on FRCP 12(b)(6) unless it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

"The primary objective of the legal system is to obtain a determination on the merits rather than a dismissal based on pleadings," and therefore motions to dismiss based on Rule 12(b)(6) are "generally viewed with disfavor." *Ramos v. Cal. Comm. of Bar Examiners Of State Bar*, 857 F. Supp. 702, 704 (N.D. Cal. 1994).  As such, the issue a court must resolve is not whether the plaintiff will ultimately prevail in their action, but whether they are entitled to present evidence

in support of their claims. *Id.* Courts must assume the pleadings are true and resolve all reasonable inferences in the plaintiff's favor, *Usher*, 828 F.2d at 561, and cannot apply a heightened pleading standard for plaintiffs asserting claims under section 1983. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1124-25 (9th Cir. 2002).

The State Bar does not dispute that, when taken as true, Plaintiff's allegations state a claim for relief under the federal constitution and the ADA. Instead, it argues his claims are precluded.

### B.     Plaintiff's Claims are not Precluded.

In *Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988), the Ninth Circuit outlined the two-part test adopted by the California Supreme Court to evaluate whether a federal court "must give preclusive effect to state court reviewed administrative decisions." Although the State Bar cites *Eilrich*, it omits any reference to the first part of that test, or to its exceptions. (MTD at 10.) As stated in *People v. Sims*, 32 Cal.3d 468 (1982), the first part of the test adopts the standard set forth in *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966): preclusion applies "when an administrative agency is [1] acting in a judicial capacity and [2] resolves disputed issues of fact properly before it [3] which the parties have had an adequate opportunity to litigate."

Second, "The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." *Eilrich*, 839 F.2d at 633.

However, the California Supreme Court has also expressly provided two exceptions to applying *res judicata*: "when the issue is a question of law rather than of fact, the prior determination is not conclusive either [1] if injustice would result or [2] if the public interest requires that relitigation not be foreclosed." *Arcadia Unified School Dist. v. State Dept. of Educ.*, 2 Cal.4th 251 (1992).

### 1.    Plaintiff's Claims are not Identical.

The issues raised by Plaintiff and the analysis conducted by the SBC in Plaintiff's disciplinary matter, which was incorporated by the California Supreme Court's Order, (MTD at 10-11), consisted of a factual analysis that was specific to Plaintiff; here, Plaintiff is raising "a general challenge to the constitutionality" of the State Bar's expert witness testimony evidentiary requirement for disabled respondents. *See Feldman*, 460 U.S. at 483-84. To begin, in Plaintiff's petition for review to the California Supreme Court, each and every heading on the pages cited

by the State Bar includes a reference to Plaintiff by name, directing the analysis to the specific facts of his matter.  (RJN Ex. 8 at 20, 22, 25, 30.)

In adopting the Review Department's opinion, the California Supreme Court agreed.  The Review Department did not engage in any constitutional analysis, and instead focused on the specific facts of Plaintiff's matter when it considered his claims: it did not mention the ADA or substantive due process; it did not mention deprivation of due process based on financial status, *see Boddie v. Connecticut*, 401 U.S. 371, 377-83 (1971); it rejected Plaintiff's procedural due process claim for factual reasons, (RJN Ex. 7 at 11, 16 n.12); it rejected Plaintiff's procedural due process claim because Plaintiff "misread[] the language" of the standard, (*id.* at 16-17); it rejected Plaintiff's equal protection claim because Plaintiff's "lay testimony is not enough to establish his depression was directly responsible for his misconduct;" (*id.* at 16); and it concluded that Plaintiff suffered no prejudice for factual reasons.  (*Id.* at 17.)  Because Plaintiff's constitutional arguments at the SBC level were argued and decided based on the specific facts of his own matter,[9] they cannot be "identical" to Plaintiff's present claims, which are a general challenge to the constitutionality of requiring disabled respondents to provide expert witness testimony to prove they have a disability.

---

[9] A denial of Plaintiff's petition for a *writ of certiorari* with the Supreme Court will reflect the same.

### 2.     Plaintiff's Claims were not Adequately Litigated.

Even if Plaintiff "raised the very same challenges" in the SBC (he did not), (MTD at 10), merely *raising* the claims is not enough: they also need to be "adequately litigated" to support *res judicata*.  *Eilrich* is instructive on what "adequate litigation" looks like.  There, the plaintiff was a police officer who was discharged for making public statements about a controversy within his department.  839 F.2d at 631.  Eilrich challenged the dismissal before an administrative body, alleging a violation of his First Amendment rights.  *Id.*  In holding that Eilrich "clearly . . . had an adequate opportunity to litigate his First Amendment claim," the court noted that: he had a 14-day proceeding that resembled a trial and produced an eleven-volume transcript; both sides were able to and did call witnesses to testify, numbering 21 in total; both sides were represented by counsel; both sides issued subpoenas, presented oral arguments, and written memoranda; and based on the foregoing, both sides fully briefed Eilrich's constitutional arguments before the hearing officer.  *Id.* at 634.  The Ninth Circuit also outlined what constitutes correspondingly adequate constitutional analysis: "The hearing officer thoroughly examined [Eilrich's] statements separately, listing the reasons he found them unprotected by the first amendment," and further conducted "the same balancing test which would be applied to Eilrich's claims in a § 1983 action," concluding that the City's actions were rationally related to a

legitimate government purpose and outweighed Eilrich's interest in public expression.  *Id.* at 634-35.

Based on *Eilrich*, it cannot be said that Plaintiff's constitutional claims were "adequately litigated" by the SBC, which conducted no constitutional analysis, whether specific to the Plaintiff or more generally, and made no reference to any balancing test or standard of review.  (RJN Ex. 7 *passim*.)  The closest the SBC came to any constitutional "analysis" that extended beyond the facts of Plaintiff's matter was to baldly state that, "Requiring expert testimony under the standard does not treat persons with disabilities differently, but provides a means for the court to evaluate the weight of mitigation credit an attorney should receive."  (*Id.* at 16.)  Without more, this fails to rise to the level of analysis necessary to support claim preclusion under *Eilrich*.

Nor is the California Supreme Court's denial of Plaintiff's petition for review sufficient to satisfy the "adequately litigated" requirement.  In its lengthy ruling that effectively ended the practice of issuing written opinions in attorney disciplinary matters, the California Supreme Court also said that it may deny a petition for review for any reason: "Even if an attorney raises an important question of law or presents a *prima facie* claim of legal or factual error, we properly may deny review if our independent examination of the record and evaluation of the attorney's factual and legal assertions establish that the

recommended discipline should be imposed." *In re Rose*, 22 Cal.4th 430, 460 (2000). But the unexplained denial of a petition for review deprives respondents of "[r]eview by a constitutional court [and] review by real judges," which also deprives them of their "constitutional right to meaningful judicial review of government acts intended to deprive [them] of the means of livelihood." *Id.* at 466 (Brown, J., dissenting). In California, "only attorneys can have their licenses suspended or revoked without a *judicial* hearing and a written *judicial* decision," which "raises serious due process and equal protection questions." *Id.* at 465 ((Kennard, J., dissenting) (emphasis in original)). To wit, a rubber stamp is not "adequate" litigation.

Finally, the SBC and California Supreme Court may not rule on the constitutional validity of their own rules.[10] As commonly understood, comity based on "adequate litigation" presumes not only a full hearing and complete analysis, but also checks and balances. *See, e.g.*, *Eirlich*, 839 F.2d at 634-35. When the constitutional challenge pertains to a law passed by a state legislature or an action taken by a public or private entity, a state's high court is justifiably looked to as the independent final arbiter of that challenge. *See Rooker v. Fidelity*

---

[10] California administrative bodies cannot rule on constitutional questions. Cal. Const. art III § 3.5. State Bar Court judges are employees of the State Bar. State Bar of California Board of Trustees Policy Manual, *29 (March 12, 2020), https://www.calbar.ca.gov/Portals/0/documents/bog/Board-of-Trustees-Policy-Manual.pdf.

*Trust Co.*, 263 U.S. 413, 415-16 (1923).  But in granting federal jurisdiction to state bar plaintiffs in *Feldman*, the United States Supreme Court signaled that without it, rules created by state bars and adopted and enforced by state high courts would otherwise be wholly immune from any independent review.

### 3.   Exceptions to *Res Judicata* Prevent its Application Here.

Finally, *res judicata* may not be applied where injustice would result either because of the effect upon third persons who are not parties to the litigation, or when the public interest requires full litigation.  *Louis Stores, Inc. v. Department of Alcoholic Beverage Control*, 57 Cal.2d 749, 757-758 (1962).  "[T]here is much administrative action that should be subject to a qualified or relaxed set of rules concerning *res judicata*."  *Id.* at 758.  Factors that weigh in favor of granting these exceptions include that the question presented is a matter of law, not fact, *id.*; that the previous decision was not officially published; that the parties did not fully present evidence for both sides of the argument; and if applying the doctrine would bar any future litigation of the issue.  *Arcadia*, 2 Cal.4th at 257-59.

In *Louis Stores*, the California Supreme Court declined to apply *res judicata* for an alcoholic beverage wholesaler based on a previously favorable decision for that wholesaler as rendered by an administrative agency.  57 Cal.2d at 754-55.  In so holding, the Court determined that the statute at issue "concerns the public interest in an industry requiring close supervision and that it is an important part of

an integrated and rather complex licensing . . . system." *Id.* at 758.  It also

determined that the public welfare and effect on third persons exceptions were

satisfied because, absent review, the wholesaler would be at an "unfair competitive

advantage" compared to other retailers.  *Id.* at 758-59.

If preserving competitive advantage in the alcoholic beverage industry

merits a public interest exception to *res judicata*, surely preserving the rights of

disabled respondents in attorney disciplinary proceedings does as well.  Here, the

matter concerns the results of an administrative proceeding that presents a question

of law concerning an "industry requiring close supervision" with an "integrated

and rather complex licensing . . . system." *Louis Stores*, 57 Cal.2d at 758.

Moreover, the Plaintiff's underlying matter is of no precedential value, and his

constitutional claims were not adequately litigated (as discussed above).  *See*

*Arcadia*, 2 Cal.4th at 257-59.

But most importantly, if this Court declines jurisdiction here, based on *res*

*judicata* or otherwise, the "practical result . . . would be that the constitutionality of

[the expert witness requirement for disabled respondents] would never again be

litigated." *Arcadia*, 2 Cal.4th at 258.  This is because the State Bar, SBC, and

California Supreme Court will, of course, continue to apply and enforce the expert

witness requirement against disabled respondents.  And in conjunction with this

Court's ruling, independent judicial review of the expert witness requirement by

the federal courts would be completely foreclosed. *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983); *Younger v. Harris*, 401 U.S. 37 (1971).

This will have a direct effect on third persons who are not parties to this litigation. As discussed above, "40 to 70 percent of disciplinary proceedings . . . involve substance use or depression, and often both."[11] In 2020, the State Bar received 14,147 cases,[12] which means that approximately 5,658 to 9,902 of those respondents are disabled. These disabled respondents will be bound by this Court's decision to decline an independent review of the State Bar's expert witness requirement, and will be unable to raise it again in any meaningful manner. "Thus, in one fell swoop, by binding all the parties in the state who have any interest in the issue without naming them as parties," the State Bar "would have effectively prevented the constitutionality of [the expert witness requirement] from ever being fully tested or defended." *Arcadia*, 2 Cal.4th at 258.

## IV.   <u>Conclusion</u>

Plaintiff is before this Court challenging a State Bar rule that applies a higher evidentiary burden for disabled respondents to prove an element of mitigation, and does so on its face. The constitutional issues raised by Plaintiff are uncharacteristically clear—they can be readily identified from the letter of the rule.

---

[11] Levin, *supra* note 5.
[12] State Bar of California, *2020 Annual Discipline Report*, SR-4 (April 27, 2021), https://www.calbar.ca.gov/Portals/0/documents/reports/2020-Annual-Discipline-Report.pdf.

Plaintiff is aware of no similar rule, in California or in any of the other 49 states. As such, denying the State Bar's MTD and allowing Plaintiff's claims to proceed would be unlikely to encourage similar lawsuits, nor would it tend to establish federal jurisdiction against the State Bar more broadly.

When Plaintiff's claims proceed to the merits, either this Court will find that the State Bar's expert witness requirement for disabled respondents is constitutional and enforceable as such, or more likely, it will strike the rule and require the State Bar to rework it. For the latter, all the State Bar would need to do is replace the words "expert witness" with "medical evidence" and delete the phrase "and the member established by clear and convincing evidence that the difficulties or disabilities no longer pose a risk that the member will commit misconduct." This will open the door for disabled respondents to argue their case and present whatever relevant evidence they may have, subject to the SBC's analysis of the weight it should receive.

Plaintiff has reviewed numerous cases in which disciplined attorneys have filed frivolous—if not borderline defamatory—lawsuits against the State Bar in federal court. This is not one of those cases. Plaintiff accepts that he has been disciplined, and here seeks only to allow similarly situated disabled attorneys to fully present their defenses before the SBC, and to allow himself the same in his reinstatement proceedings.

Respectfully submitted,

Dated:         September 27, 2021          MICHAEL B. POTERE


By:   /s/ Michael B. Potere
        MICHAEL B. POTERE

Plaintiff

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT