1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| MICHAEL BERNARD POTERE, | Case No. 2:21-cv-05208-JAK-JC |
|---|---|
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| THE BOARD OF TRUSTEES OF THE STATE BAR OF CALIFORNIA and LEAH WILSON, | [DOCKET NO. 18] |
| Defendants. | |

This Report and Recommendation is submitted to the Honorable John A. Kronstadt, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

I.      **SUMMARY**

On September 4, 2021, plaintiff Michael Bernard Potere, who is at liberty, is proceeding *pro se*, and has been granted leave to proceed *in forma pauperis*, filed the operative First Amended Complaint for Declaratory and Injunctive Relief ("First Amended Complaint" or "FAC") pursuant to 42 U.S.C. § 1983 ("Section 1983") and the Americans with Disabilities Act ("ADA") against the Board of Trustees of the State Bar of California and Leah Wilson, who is sued in her official

capacity as the executive director of the Board of Trustees.[1]  Plaintiff, a former attorney who was disbarred following a criminal conviction, claims that a certain procedural rule of the State Bar of California ("State Bar") that was applied in his disbarment proceedings violates his Fourteenth Amendment rights to procedural and substantive due process and equal protection and his rights under Title II of the ADA.  The procedural rule at issue – Standard 1.6(d) in Title IV of the State Bar's Rules of Procedure ("Standard 1.6(d)") – permits extreme emotional difficulties or physical or mental disabilities to be considered as "mitigating circumstances" in State Bar disciplinary proceedings only if the respective disability is "established by expert testimony as directly responsible for the misconduct" and is shown to "no longer pose a risk that the lawyer will commit misconduct."  (FAC Ex. A).

On September 20, 2021, defendants filed a Motion to Dismiss the First Amended Complaint ("Motion" or "MTD") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[2]  Plaintiff filed an Opposition to the Motion ("Opp.") on September 27, 2021, and defendants followed with the Reply on October 4, 2021.  The Motion has been submitted for decision.

---

[1]Plaintiff initiated this action on June 24, 2021, by filing a Complaint against the Board of Trustees and Donna Hershkowitz, who was then the interim executive director of the Board of Trustees.  Defendants moved to dismiss the Complaint on August 20, 2021, and the Court denied defendants' motion as moot after plaintiff timely filed his First Amended Complaint.  See Fed. R. Civ. P. 15(a)(1) (permitting party to amend its pleading once as a matter of course if it is one to which a responsive pleading is required, within 21 days after service of a motion under Rule 12(b)).

[2]In connection with their Motion, defendants also filed a Request for Judicial Notice with exhibits ("RJN Ex.") to which plaintiff does not object (Opp. at 3 n.6), and which should be granted because it requests judicial notice of official public records of this Court, the California Supreme Court, and the State Bar which are relevant and appropriate for judicial notice.  See Harris v. County of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (court may take judicial notice of undisputed matters of public record including documents on file in federal or state courts).

2

1    Based upon a thorough review of the record and the applicable law, and for
2    the reasons discussed below, defendants' Motion should be granted, the First
3    Amended Complaint should be dismissed without leave to amend and this action
4    should be dismissed.

5    **II.    BACKGROUND**

6        **A.    Criminal Conviction and Disbarment**

7        In 2017, plaintiff threatened his former law firm that he would publicize
8    confidential firm information unless the firm met his payment demands.  Based on
9    the circumstances of that incident, plaintiff was indicted and ultimately pled guilty
10   in this Court, in case no. 2:17-cr-00446-JFW-1, to one count of "accessing a
11   computer without authorization to obtain information," in violation of Title 18,
12   sections 1030 (a)(2)(c) and (c)(2)(A) of the United States Code, and sentenced to
13   five months in prison.  (See RJN Exs. 1-4).  On March 20, 2018, the State Bar
14   Office of Chief Trial Counsel transmitted the record of plaintiff's criminal
15   conviction to the State Bar Court to begin attorney discipline proceedings pursuant
16   to sections 6101–6102 of the California Business and Professions Code, which
17   provides for suspension and disbarment of attorneys convicted of crimes involving
18   moral turpitude.  (See RJN Ex. 5).

19       On October 28, 2019, after a three-day hearing, the State Bar Court Hearing
20   Department found that the facts and circumstances surrounding plaintiff's
21   conviction established moral turpitude and recommended that plaintiff be disbarred.
22   (See RJN Ex. 6).  On October 16, 2020, the State Bar Court Review Department
23   affirmed the recommendation of disbarment.  (See RJN Ex. 7).  On January 25,
24   2021, plaintiff filed a petition for review in the California Supreme Court, which
25   denied review on March 30, 2021, and ordered plaintiff disbarred.  (RJN Exs. 8-9).
26   Plaintiff thereafter filed a petition for writ of certiorari in the United States Supreme
27   Court which was denied on October 4, 2021.  See Potere v. State Bar of Cal., U.S.
28   Supreme Court Case No. 21-5020.

**B.    First Amended Complaint**

Plaintiff alleges that the misconduct underlying his conviction was the result of a "major depressive episode" that made him "unable to think clearly or fully grasp the nature of his statements or actions."  (FAC at 12, ¶¶ 23-24).  In his State Bar disciplinary proceedings, plaintiff attempted to claim his depression was a mitigating circumstance under State Bar Standard 1.6(d), which permits an attorney's "extreme emotional difficulties or physical or mental disabilities" to be considered as "mitigating circumstances" in disciplinary proceedings only if, among other requirements, (1) the difficulties or disabilities are "established by expert testimony as directly responsible for the misconduct" and (2) the attorney proves by clear and convincing evidence that the difficulties or disabilities "no longer pose a risk that the lawyer will commit misconduct[.]"  (FAC at 12, ¶ 24; FAC Ex. A).

At the time of his disciplinary proceedings, plaintiff was working in retail and could not afford an expert witness as required by Standard 1.6(d).  (FAC at 12, ¶ 25).  When he raised this issue at his disciplinary hearing, defendants responded through counsel that plaintiff "should have 'saved up' to hire an expert during 'his incarceration'" because he had known these proceedings were on the horizon.  (FAC at 12, ¶ 26).  Without expert testimony, plaintiff instead offered his mental health medical records as evidence, including letters and medical records from multiple therapists and psychiatrists diagnosing him with depression and prescribing antidepressant medications.  (FAC at 12-13, ¶ 27).  Defendants objected that plaintiff had failed to call an expert witness or comply with requisite procedures for submitting expert evidence and was instead "attempting to essentially back-door an expert opinion" in the case.  (FAC at 13, ¶¶ 28-30).  The State Bar Court subsequently rejected plaintiff's mental disability defense because he had "failed to provide any evidence from an expert" pursuant to Standard 1.6(d). (FAC at 13, ¶ 31).

Plaintiff asserts "[o]n information and belief" that defendants knew he would be unable to afford an expert witness and "strategically used Standard 1.6(d)" to exclude any other mental-disability evidence.  (FAC at 14, ¶ 32).  Plaintiff further asserts "[o]n information and belief" that defendants "have broadly employed Standard 1.6(d)" in this manner against other indigent disabled respondents, and continue to do so, with "potentially ruinous consequences for untold numbers of indigent disabled respondents in the future."  (FAC at 14, ¶¶ 33-34).  Plaintiff contends, moreover, that Standard 1.6(d) discriminates against disabled respondents by imposing the additional evidentiary burden and expense of expert witness testimony, which is not imposed for any other enumerated mitigating circumstance.  (FAC at 4, ¶ 7).  Plaintiff also contends that by requiring proof that the disabilities at issue "no longer pose a risk" of misconduct, Standard 1.6(d) essentially punishes people for continuing to suffer such disabilities.  (FAC at 5-6, ¶ 4).

Based on these allegations and contentions, plaintiff's First Amended Complaint sets forth four separate claims against defendants, respectively asserting violations of (1) Fourteenth Amendment procedural due process, (2) Fourteenth Amendment substantive due process, (3) Fourteenth Amendment equal protection, and (4) Title II of the ADA.  (FAC at 14-25).  He seeks a declaratory judgment and a permanent injunction preventing defendants from employing or enforcing Standard 1.6(d) in the future.  (FAC at 6, ¶ 11; FAC at 25-26).  Plaintiff asserts that he seeks only *prospective* relief, and "does not ask that this Court set aside, reverse, or take any action regarding the decisions made by the California State Bar Court or California Supreme Court in his specific matter."  (FAC at 9, ¶ 20c-d).  Plaintiff states that this prospective relief will benefit him when he petitions for reinstatement to the State Bar, which he will be able to do as of March 30, 2026.  (FAC at 9-10, ¶ 20d.i).  He states that he will also benefit in his pending attorney disciplinary proceedings in Illinois, where the Attorney Registration and Disciplinary Commission filed a petition for reciprocal discipline with the Illinois

5

1   Supreme Court based on the outcome of plaintiff's California State Bar
2   proceedings.  (FAC at 10-11, ¶ 20d.ii).  In those proceedings, plaintiff has sought
3   relief based on the asserted unconstitutionality of the California State Bar's
4   Standard 1.6(d), which would be proved by this Court's favorable ruling on
5   plaintiff's claims here.  (FAC at 10-11, ¶ 20d.ii).  In addition, plaintiff seeks
6   prospective relief "on behalf of those similarly situated."  (FAC at 11, ¶ 20.e).

7   **III.   PERTINENT LAW**

8       **A.   Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter**
9           **Jurisdiction**

10       Federal courts are presumed to lack subject matter jurisdiction until the party
11   seeking to invoke federal jurisdiction establishes the contrary.  See Kokkonen v.
12   Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted); A-Z
13   Int'l v. Phillips, 323 F.3d 1141, 1145 (9th Cir. 2003) (citation omitted).  A motion
14   to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court.
15   Tosco Corp. v. Cmtys. for a Better Envt., 236 F.3d 495, 499 (9th Cir. 2001),
16   abrogated on other grounds by Hertz Corp. v. Friend, 559 U.S. 77 (2010).  A Rule
17   12(b)(1) motion may be brought as a facial and/or factual challenge to the
18   sufficiency of a plaintiff's jurisdictional allegations.  Safe Air for Everyone v.
19   Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004), cert. denied, 544 U.S. 1018 (2005).
20   When evaluating a facial challenge, the court presumes the allegations in the
21   complaint to be true, and draws all reasonable inferences in favor of the plaintiff.
22   Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  Plaintiff bears the burden
23   of establishing that the Court has subject matter jurisdiction.  See Smith v.
24   McCullough, 270 U.S. 456, 459 (1926) (citation omitted); Sopcak v. N. Mountain
25   Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995).

26       **B.   Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

27       A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a
28   claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal pursuant

to Rule 12(b)(6) is proper when a complaint fails to assert a claim under a cognizable legal theory and/or fails to allege sufficient facts to support such a claim. See Taylor v. Yee, 780 F.3d 928, 935 (9th Cir. 2015) (citation and quotation marks omitted), cert. denied, 136 S. Ct. 929 (2016).  "Rule 12(b)(6) is read in conjunction with Rule 8(a)" of the Federal Rules of Civil Procedure ("Rule 8").  Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013).

To avoid dismissal, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Byrd v. Phoenix Police Dep't, 885 F.3d 639, 642 (9th Cir. 2018) (citations omitted); see also Johnson v. City of Shelby, Miss., 574 U.S. 10, 12 (2014) (per curiam) (plaintiff "must plead facts sufficient to show that [plaintiff's] claim has substantive plausibility").  A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

At the motion to dismiss stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not.  Id. (citation and quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'") (quoting Iqbal, 556 U.S. at 678-79), cert. denied, 574 U.S. 1077 (2015).  In addition, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted), and "need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (citation omitted).
///

In general, courts consider only the contents of a complaint when evaluating a motion to dismiss under Rule 12(b)(6). United States v. Corinthian Colleges, 655 F.3d 984, 998-99 (9th Cir. 2011) (citation omitted). However, in certain circumstances a court may consider documents attached to the complaint (or upon which the complaint "necessarily relies") as well as judicially noticed matters of public record. Id. at 999 (citations omitted). A court may also consider factual allegations outside of the complaint when determining whether to grant leave to amend after a motion to dismiss is granted. See Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

Civil rights complaints are interpreted liberally in order to give *pro se* plaintiffs "the benefit of any doubt." Byrd, 885 F.3d at 642 (citations and internal quotation marks omitted). A *pro se* plaintiff, however, must still follow the rules of procedure that govern all litigants in federal court, including the Rule 8 requirement that a complaint minimally state a short and plain statement of a claim that is plausible on its face. See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir.) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.") (citation omitted), cert. denied, 516 U.S. 838 (1995); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights complaint may not supply essential elements of [a] claim that were not initially pled.") (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)) (quotation marks omitted; ellipses in original).

If a *pro se* complaint is dismissed because it does not state a viable claim, the court must freely grant "leave to amend" if it is "at all possible" that the plaintiff could fix the identified pleading errors by alleging different or new facts. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc) (citations and internal quotation marks omitted). Nonetheless, courts have the

1  discretion to deny leave to amend in cases of undue delay, bad faith, undue
2  prejudice to the opposing party, and futility.  See Foman v. Davis, 371 U.S. 178,
3  182 (1962); Cafasso, 637 F.3d at 1058 (citations omitted).

4  **IV.  DISCUSSION**

5        Defendants' Motion seeks dismissal of the First Amended Complaint for lack
6  of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of
7  Civil Procedure, on the ground that plaintiff lacks standing to seek prospective
8  relief with respect to State Bar Standard 1.6(d) because he does not sufficiently
9  allege that the requirements of this provision will be imminently enforced against
10  him.  (See Motion at 5-9).  The Motion also seeks dismissal pursuant to Rule
11  12(b)(6), on the ground that plaintiff's claims are precluded because he already
12  litigated them in state court and lost.  (See Motion at 9-12).

13        For the reasons explained below, defendants' Motion should be granted, the
14  First Amended Complaint should be dismissed without leave to amend, and this
15  action should be dismissed.

16        **A.  Plaintiff Lacks Standing**

17        A Section 1983 plaintiff invoking federal jurisdiction has the burden to
18  establish standing.  Kowalski v. Tesmer, 543 U.S. 125, 128-29 (2004); Lujan v.
19  Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citations omitted); see also A-Z
20  Int'l, 323 F.3d at 1145 ("A federal court is presumed to lack jurisdiction in a
21  particular case unless the contrary affirmatively appears.") (citations and quotation
22  marks omitted).  Proof of standing is an "indispensable part of [every] plaintiff's
23  case," and a plaintiff must support "each element [of standing] . . . in the same way
24  as any other matter on which the plaintiff bears the burden of proof, i.e., with the
25  manner and degree of evidence required at the successive stages of the litigation."
26  Lujan, 504 U.S. at 561 (citations omitted).  "[L]ack of Article III standing requires
27  dismissal for lack of subject matter jurisdiction under Federal Rule of Civil
28  ///

9

1   Procedure 12(b)(1)."[3]  <u>Maya v. Centex Corp.</u>, 658 F.3d 1060, 1067 (9th Cir. 2011)

2   (citations omitted).

3        Standing requires each plaintiff in federal court to have a sufficient "personal

4   stake in the outcome" of a particular claim to satisfy the "case or controversy"

5   requirement of Article III of the United States Constitution.  <u>Fleck and Assocs., Inc.</u>

6   <u>v. City of Phoenix</u>, 471 F.3d 1100, 1103-04 (9th Cir. 2006) (citing <u>Warth v. Seldin</u>,

7   422 U.S. 490, 498 (1975)).  To establish standing to seek prospective declaratory or

8   injunctive relief, the plaintiff must demonstrate that he has suffered or is threatened

9   with a "concrete and particularized" legal harm, <u>Lujan</u>, 504 U.S. at 560, and that

10  there is "a sufficient likelihood that he will again be wronged in a similar way,"

11  <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 111 (1983).  "As to the second inquiry,

12  he must establish a 'real and immediate threat of repeated injury.'" <u>Bates v. United</u>

13  <u>Parcel Serv., Inc.</u>, 511 F.3d 974, 985 (9th Cir. 2007) (quoting <u>O'Shea v. Littleton</u>,

14  _____

15      [3]Although there are two doctrines which govern whether a plaintiff has standing to
16  proceed in federal court – namely (1) Article III or "constitutional standing" and (2) "prudential
    standing" – it appears that only plaintiff's Article III standing has been placed in issue by
17  defendants' Motion.  "Prudential" standing "is a doctrine that is not derived from Article III and
    is "not exhaustively defined but encompass[es] . . . at least three broad principles:  the general
18  prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of
    generalized grievances more appropriately addressed in the representative branches, and the
19  requirement that a plaintiff's complaint fall within the zone of interests protected by the law
    invoked." <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 572 U.S. 118, 126 (2014)
20  (citations and internal quotations omitted).  Dismissal for lack of prudential standing is typically
    based on Federal Rule of Civil Procedure 12(b)(6). <u>See Bos. Sci. Corp. v. BioCardia, Inc.</u>, 524
21  F. Supp. 3d 914, 918 (N.D. Cal. 2021) ("The Supreme Court has . . . made clear that questions of
    prudential standing should generally be considered questions about the ability of a plaintiff to
22  state a claim, not questions about jurisdiction.  This reinforces the conclusion that dismissal must
    be under Rule 12(b)(6), not Rule 12(b)(1).") (citing <u>Lexmark Int'l, Inc.</u>, 572 U.S. at 127-28;
23  <u>Elizabeth Retail Props. LLC v. KeyBank Nat. Ass'n</u>, 83 F. Supp. 3d 972, 985-86 (2015) (citation
24  omitted).  Although only Article III standing is currently in issue, the Court observes that
    plaintiff, who is proceeding *pro se*, cannot pursue legal action or seek legal relief on behalf of
25  others "similarly situated" as he purports to do (<u>see, e.g.</u>, FAC at 6, ¶ 11; FAC at 11, ¶ 20e; FAC
26  17, ¶ 47; FAC at 20, ¶ 63; FAC at 25, ¶¶ 83, 86).  <u>See Simon v. Hartford Life, Inc.</u>, 546 F.3d
    661, 665 (9th Cir. 2008) (*pro se* plaintiffs may not pursue claims on behalf of others in a
27  representative capacity) (citations omitted).

28

1  414 U.S. 488, 496 (1974)); see also Scott v. Pasadena Unified Sch. Dist., 306 F.3d

2  646, 656 (9th Cir. 2002) (A plaintiff may satisfy injury-in-fact requirement based

3  on fear of future injury by government action if plaintiff "is *immediately* in danger

4  of sustaining some *direct* injury as the result of the challenged official conduct and

5  the injury or threat of injury is both real and immediate, not conjectural or

6  hypothetical.") (quoting Lyons, 461 U.S. at 102) (quotation marks omitted;

7  emphasis in original), cert. denied, 538 U.S. 1031 (2003); Babbitt v. United Farm

8  Workers Nat'l Union, 442 U.S. 289, 298 (1979) ("One does not have to await the

9  consummation of threatened injury to obtain preventive relief.  If the injury is

10  certainly impending, that is enough.") (citations and quotation marks omitted).  "In

11  addition, the claimed threat of injury must be likely to be redressed by the

12  prospective injunctive relief."  Bates, 511 F.3d at 985 (citation omitted).

13        At the pleading stage, "general factual allegations of injury resulting from the

14  defendant's conduct" may be sufficient to establish standing.  Lujan, 504 U.S. at

15  561 (citation omitted); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d

16  1136, 1140 (9th Cir. 2003) (at pleading stage plaintiff "need only show that the

17  facts alleged, if proved, would confer standing upon him") (citing Steel Co. v.

18  Citizens for a Better Env't, 523 U.S. 83, 104 (1998)); see generally Maya, 658 F.3d

19  at 1068 (observing that pleading requirements in Bell Atlantic Corp. v. Twombly,

20  550 U.S. 544 (2007) and Iqbal, 556 U.S. 662 "are ill-suited to application in the

21  constitutional standing context").  A plaintiff may not establish standing, however,

22  with "bare legal conclusion[s]" or "an 'ingenious academic exercise in the

23  conceivable.'"  Maya, 658 F.3d at 1068 (footnotes omitted).

24        As noted above, plaintiff's First Amended Complaint seeks prospective

25  declaratory and injunctive relief based on claims that State Bar Standard 1.6(d)

26  violates the United States Constitution and the ADA, primarily by requiring

27  plaintiff and other disabled respondents in disciplinary proceedings to produce

28  expert witness testimony to support their claims that their disability qualifies as a

11

1  "mitigating circumstance" in the misconduct at issue.  (See FAC at 14-26).

2  Although plaintiff contends that Standard 1.6(d) was unfairly applied against him in

3  his disbarment proceedings, he firmly asserts that he "does not ask that this Court

4  set aside, reverse, or take any action regarding the decisions made by the California

5  State Bar Court or California Supreme Court in his specific matter."  (FAC at 9, ¶

6  20c-d; see also Opp. at 7-9).  Indeed, if plaintiff were to seek such relief, his claims

7  would be precluded by the Rooker-Feldman doctrine.[4]  See Canatella v. State of

8  California, 304 F.3d 843, 849 (9th Cir. 2002) ("Feldman holds that 28 U.S.C. §

9  1257 prevents federal courts from asserting jurisdiction over final 'judicial'

10  determinations by state supreme courts.") (citing D.C. Ct. of Appeals v. Feldman,

11  460 U.S. 462, 476 (1983)).  However, to have standing to seek solely prospective

12  relief with respect to Standard 1.6(d), plaintiff must establish that this provision

13  poses "a real and immediate threat" to him.  See Bates, 511 F.3d at 985.

14        To support his argument for standing, plaintiff cites Canatella, 304 F.3d 843,

15  in which the Ninth Circuit held that the plaintiff had standing to proceed in federal

16  court on claims for prospective injunctive and declaratory relief challenging the

17  constitutionality of certain provisions as to which the State Bar had disciplined him.

18  (See Opp. at 12-14).  However, the plaintiff in Canatella had not been disbarred.

19

20

21      [4]The Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments

22  rendered before the district court proceedings commenced.'"  Lance v. Dennis, 546 U.S. 459,
460 (2006) (per curiam) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280,

23  284 (2005)); see Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923); D.C. Ct. of Appeals
v. Feldman, 460 U.S. 462 (1983).  In Feldman, the Supreme Court held that federal district

24  courts lack jurisdiction "over challenges to state court decisions in particular cases arising out of
judicial proceedings even if those challenges allege that the state court's action was

25  unconstitutional."  Feldman, 460 U.S. at 486.  However, federal district courts do "have subject

26  matter jurisdiction over general challenges to state bar rules, promulgated by state courts in
non-judicial proceedings, which do not require review of a final state court judgment in a

27  particular case."  Id.  Nonetheless, as established above, plaintiff still must have standing to
bring such general challenges.

28

Instead, after a thirty-day suspension, the plaintiff was able to continue practicing law in California, and he indicated that he would continue to engage in the conduct for which he had been disciplined under the challenged provisions. Id. at 852-53. The Ninth Circuit therefore held that there was "a strong likelihood Canatella may again face discipline under the challenged provisions," and "[h]is threat of future prosecution [was] not merely hypothetical and conjectural, but actual." Id. at 853. Here, in contrast, plaintiff's disbarment leaves him with no likelihood of facing discipline which might implicate the challenged provision.[5]

Plaintiff contends that he will be harmed again by Standard 1.6(d) when he petitions for reinstatement to the State Bar, which he will be able to do as of March 30, 2026. (Opp. at 4-7; see FAC at 9-10, ¶ 20d.i). According to plaintiff, State Bar Standard 1.1, along with Rule 5.446(A) of the Rules of Procedure of the State Bar ("State Bar Rule(s)"), establish that Standard 1.6(d) applies in disbarment reinstatement proceedings. (Opp. at 4-5; FAC at 9, ¶ 20d.i). He contends that a favorable ruling in this action will enable him to introduce evidence of his mental disability, both at the time of his past misconduct and his subsequent rehabilitation, without having the additional burden of presenting an expert witness. (FAC at 9, ¶ 20d.i). In particular, he states that he will argue for reinstatement on the grounds that his mental disability caused his misconduct, and he "has subsequently been

///

---

[5]Canatella is also distinguishable because the plaintiff in that case raised a First Amendment overbreadth challenge as to which standing requirements are relaxed, such that "standing arises 'not because [the plaintiff's] own rights of free expression are violated, but because of a judicial prediction or assumption that the [challenged statute's] very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" Canatella, 304 F.3d at 853 (quoting Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973)). As such, it was "enough that Canatella show[ed] that he and others in his position face[d] a credible threat of discipline under the challenged statutes, and may consequently forego their expressive rights under the First Amendment." Id. at 854. No such challenge is raised here.

rehabilitated, recovered from his disability, and has the moral qualifications to be reinstated."  (FAC at 9, ¶ 20d.i) (citing State Bar Rule 5.445(A)).

However, contrary to plaintiff's reading of the State Bar Rules, the challenged provision does not apply in reinstatement proceedings.  Standard 1.6(d) is part of the State Bar's "Standards for Attorney Sanctions for Professional Misconduct," Title IV of the State Bar Rules.  The "Standards" were adopted "to set forth a means for *determining the appropriate disciplinary sanction* in a particular case and to ensure consistency across cases dealing with similar misconduct and surrounding circumstances."  Standard 1.1 (emphasis added).  Standard 1.6, in particular, expressly concerns "mitigating circumstances," which are defined as "factors surrounding a lawyer's misconduct that demonstrate that the primary purposes of discipline warrant a more lenient sanction than what is otherwise specified in a given Standard."  Standard 1.2(i) (defining "[m]itigating circumstances" as used in the Standards).  By its terms, then, Standard 1.6 is a means for determining the appropriate disciplinary sanctions to apply in a particular case.  It applies only to disciplinary proceedings.  Pursuant to State Bar Rule 5.446(A), all "[r]ules that by their terms apply only to disciplinary proceedings" are excluded from reinstatement proceedings.

Plaintiff supports his contrary argument by pointing to a limiting provision in Standard 1.1 which specifies that the Standards "do not apply to:  non-disciplinary dispositions such as admonitions and agreements in lieu of discipline; resignations; involuntary inactive enrollments; interim suspensions after conviction of a crime; or suspensions for nonpayment of State Bar fees, failure to comply with child support orders, or tax delinquencies."  Plaintiff contends that "[b]ecause Standard 1.1 does not expressly exclude disbarment reinstatement proceedings, the State Bar Court may use the Standards – including Standard 1.6(d) – in determining the outcome of Plaintiff's reinstatement petition."  (Opp. at 5).  However, it is unreasonable to assume that the Standards may be applied in any circumstances not specifically

14

1  excluded by this narrow non-exhaustive list.  Regardless, even assuming that the

2  State Bar *could* apply Standard 1.6 in reinstatement proceedings based on plaintiff's

3  construction of Standard 1.1, plaintiff fails plausibly to allege any "sufficient

4  likelihood" that this will occur.  See Lyons, 461 U.S. 111.

5      As explained above, Standard 1.6 expressly provides a means for "mitigating

6  circumstances" to be considered in disciplinary determinations.  This would have no

7  place in reinstatement proceedings, which are of course non-disciplinary.  No

8  disciplinary sanction will be determined in plaintiff's future reinstatement

9  proceedings.  State Bar Rule 5.445(A) provides that petitioners seeking

10 reinstatement after disbarment must "establish their rehabilitation" and "establish

11 present moral qualifications for reinstatement," among other requirements.  There is

12 nothing in the State Bar Rules or Standards to suggest that petitioners for

13 reinstatement have an opportunity to challenge the findings made in their prior

14 disbarment decisions or otherwise to argue that mitigating circumstances warranted

15 a more lenient sanction than the one already imposed and therefore favor

16 reinstatement.[6]  To the contrary, Standard 1.6 is irrelevant in such proceedings, and

17 plaintiff's argument to the contrary is no more than an "ingenious academic

18 exercise in the conceivable."  Maya, 658 F.3d at 1068.

19

20

21     [6]Plaintiff states that if this Court rules in his favor in this case and declares Standard
   1.6(d) unconstitutional, he "will ask the [State Bar Court] judge presiding over his reinstatement

22 proceedings to reconsider evidence of his disability at the time of his misconduct, and to
   correspondingly reevaluate the weight it assigns to its severity as it pertains specifically to his

23 reinstatement."  (Opp. at 8).  In other words, *if* this Court rules in his favor, then the State Bar
   might enable plaintiff to relitigate its prior Section 1.6(d) mitigation finding in future

24 reinstatement proceedings.  However, this Court's ability to redress plaintiff's past harm is not at
   issue here.  Plaintiff must instead demonstrate that Standard 1.6(d) poses a real and immediate

25 threat of future injury to him that itself could be redressed by declaratory or injunctive relief in
   this case.  See Bates, 511 F.3d at 985 (plaintiffs seeking prospective injunctive relief must

26 demonstrate a "real and immediate threat of repeated injury," and the "claimed threat of injury
   must be likely to be redressed by the prospective injunctive relief") (internal quotations and

27 citations omitted).

28

1    Plaintiff also contends that he has standing because a favorable ruling in this
2    case will help him defend against a pending petition for reciprocal discipline in the
3    Illinois Supreme Court that is based on his disbarment in California.  (FAC at 10-
4    11, ¶ 20d.ii; see Opp. at 7 ).  However, Standard 1.6(d) is solely a provision of the
5    California State Bar which carries no independent force in Illinois.  Because it poses
6    no harm to him in the Illinois proceedings, this cannot be a basis for standing in this
7    case.
8         Because plaintiff has failed to show that Standard 1.6(d) will apply in his
9    future reinstatement proceedings or any impending circumstance, the challenged
10   provision poses no further threat to him – unless, perchance, he is first reinstated as
11   a member of the State Bar and then engages in misconduct for which he again
12   becomes subject to State Bar disciplinary proceedings.  Any likelihood of injury,
13   then, is far too remote and speculative for Article III standing.  See Clapper v.
14   Amnesty Int'l USA, 568 U.S. 398, 410 (2013) (a theory of standing that "relies on a
15   highly attenuated chain of possibilities[] does not satisfy the requirement that
16   threatened injury must be certainly impending") (citations omitted); Whitmore v.
17   Arkansas, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not
18   satisfy the requirements of Art. III.  A threatened injury must be 'certainly
19   impending' to constitute injury in fact.") (quoting Babbitt, 442 U.S. at 298).
20   Accordingly, plaintiff lacks standing to pursue his claims in this Court.
21        **B.    Plaintiff's Claims Are Barred by Res Judicata**
22        Where a state court judgment is at issue, federal courts apply the preclusion
23   rules of the state – in this case, California.  Gupta v. Thai Airways Int'l, Ltd., 487
24   F.3d 759, 765 (9th Cir. 2007) (citing Migra v. Warren City Sch. Dist. Bd. of Educ.,
25   465 U.S. 75, 81 (1984); Allen v. McCurry, 449 U.S. 90, 96 (1980)).  In California,
26   the doctrine of res judicata, or claim preclusion, "prevents relitigation of the same
27   cause of action in a second suit between the same parties or parties in privity with
28   them."  DKN Holdings LLC v. Faerber, 61 Cal. 4th 813, 824 (2015) (quoting

Mycogen Corp. v. Monsanto Co., 28 Cal. 4th 888, 896 (2002)).  "Claim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit."[7]  Id. (citations omitted).

As for the first prong, the determination of what constitutes the same "cause of action" for preclusion purposes uses a "primary rights" theory, "under which the invasion of one primary right gives rise to a single cause of action."  Kay v. City of Rancho Palos Verdes, 504 F.3d 803, 809 (9th Cir. 2007) (noting that the "primary rights theory does not mean that different causes of action are involved just because relief may be obtained under . . . either of two legal theories") (quoting Robi v. Five Platters, Inc., 838 F.2d 318, 324 (9th Cir. 1988)).  "[I]n California, 'if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.'"  Furnace v. Giurbino, 838 F.3d 1019, 1024 (9th Cir. 2016) (quoting San Diego Police Officers' Ass'n v. San Diego City Emps. Ret. Sys., 568 F.3d 725, 734 (9th Cir. 2009)), cert. denied, 137 S. Ct. 2195 (2017); see also Salas v. Gomez, 2016 WL 3971206, at *8 (N.D. Cal. July 25, 2016) ("The term 'cause of action' 'relates not to the remedy involved or the relief asked, but to the right or obligation which is sought to be enforced.'") (quoting Ideal Hardware & Supply

---

[7]The terms "res judicata" and "claim preclusion" refer to the same doctrine and are often used interchangeably.  This doctrine is related to, but distinct from, the doctrine of "collateral estoppel," or "issue preclusion," which "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action."  DKN Holdings LLC, 61 Cal. 4th at 824 (citing Mycogen, 28 Cal. 4th at 896); see also id. (explaining that the term "claim preclusion" should be used to refer to the doctrine of res judicata, while "issue preclusion" refers to collateral estoppel).  "[I]ssue preclusion applies:  (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."  Id. at 825.

17

1    Co. v. Dep't of Employment, 114 Cal. App. 2d 443, 448 (1952)).  "The critical

2    focus of primary rights analysis is the harm suffered."  Furnace, 838 F.3d at 1024

3    (quoting Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2009)).

4          Here, plaintiff's petition for review in the California Supreme Court raised all

5    the same claims that he raises in this action, and they concern the same harm

6    suffered through the operation of Standard 1.6(d) in plaintiff's State Bar

7    proceedings.  (See RJN Ex. 8 at 17-25).  Plaintiff contends that his previous claims

8    were not the same because they were specific to him, whereas his claims in this

9    Court "are a general challenge to the constitutionality of requiring disabled

10   respondents to provide expert witness testimony to prove they have a disability."

11   (Opp. at 17-18).  However, notwithstanding that plaintiff now seeks prospective

12   relief on behalf of himself and those "similarly situated," the facts underlying the

13   claims in this Court expressly concern the harm inflicted on plaintiff by Standard

14   1.6(d) in his State Bar disciplinary proceedings.  (See FAC at 11-14, ¶¶ 21-32).

15   Moreover, just as he does in this Court, plaintiff's petition in the California

16   Supreme Court clearly raised general constitutional challenges to Standard 1.6(d),

17   frequently asserting that the provision violated the rights of "disabled respondents"

18   (or more generally, "respondents") in disciplinary proceedings.  (See RJN Ex. 8 at

19   17-25).  Because plaintiff brings the same facts, harm, and claims in this Court as in

20   his state petition, the "same claim" requirement is met.  See Scheer v. Pasternak,

21   2017 WL 8944058, at *8 (C.D. Cal. Jan. 6, 2017) ("same claim" requirement was

22   met where plaintiff's petition for review of State Bar Court decision in the

23   California Supreme Court raised same facial and as-applied constitutional

24   challenges as her federal complaint, based on same facts and same injury suffered)

25   (citing Furnace, 838 F.3d at 1025), report and recommendation adopted, 2017 WL

26   1536387 (C.D. Cal. Apr. 28, 2017), aff'd, 723 F. App'x 519 (9th Cir. 2018).

27         This case also clearly satisfies the second and third prongs for claim

28   preclusion – i.e., that the case involves the "same parties" and that the prior case

18

reached a "final judgment on the merits." <u>DKN Holdings LLC</u>, 61 Cal. 4th at 824.
The "same parties" requirement is met because plaintiff "was clearly a party to [his]
disciplinary proceedings in the State Bar Court and California Supreme Court," and
defendants, "sued in their official capacity, were parties to the State Bar disciplinary
proceedings or in privity with the State Bar." <u>Scheer</u>, 2017 WL 8944058, at *8
(citing <u>DKN Holdings LLC</u>, 61 Cal. 4th at 824). Moreover, under California law,
the California Supreme Court's denial of plaintiff's petition for review of the State
Bar Court decision was "a final judicial determination on the merits for purposes of
establishing . . . res judicata." <u>In re Rose</u>, 22 Cal. 4th 430, 448 (2000).

     Plaintiff contends that preclusion cannot apply here because his claims were
not "adequately litigated" in the State Bar Court. (Opp. at 19-22) (citing <u>Eilrich v.
Remas</u>, 839 F.2d 630, 632 (9th Cir.), <u>cert. denied</u>, 488 U.S. 819 (1988); <u>People v.
Sims</u>, 32 Cal. 3d 468, 486 (1982), <u>superseded by statute on other grounds</u>, Cal.
Vehicle Code § 13353.2). However, to the extent plaintiff suggests the State Bar
Court needed to have expressly analyzed and ruled on plaintiff's claims for
purposes of res judicata, plaintiff is mistaken. At most, for res judicata to apply
here, plaintiff need only have had an *adequate opportunity* to litigate the federal
claims in the state tribunal. <u>See Sims</u>, 32 Cal. 3d at 486 (res judicata or collateral
estoppel may be applied to administrative agency decisions "[w]hen an
administrative agency is acting in a judicial capacity and resolves disputed issues of
fact properly before it which the parties have had an *adequate opportunity to
litigate . . .* ") (emphasis added) (quoting <u>United States v. Utah Constr. Co.</u>, 384
U.S. 394, 422 (1966)).[8] Because plaintiff was able to raise his federal claims before

---

     [8]As support for his contention that his claims need to have been "adequately litigated" by
the State Bar Court, plaintiff cites the Ninth Circuit's opinion in <u>Eilrich</u>, 839 F.2d 630, which he
says is "instructive on what 'adequate litigation' looks like." (Opp. at 19). However, regardless
of the facts at issue in <u>Eilrich</u>, nowhere did the Ninth Circuit suggest that "adequate litigation"
itself was necessary for res judicata to apply to administrative agency decisions in California –
(continued...)

1   the State Bar Court and the California Supreme Court (see RJN Ex. 7 at 1-2, 10-11,

2   15-17; Ex. 8 at 17-25), he had an "adequate opportunity" to litigate the claims for

3   purposes of res judicata, notwithstanding the California Supreme Court's summary

4   denial.  See In re Rose, 22 Cal. 4th at 448 (holding that the California Supreme

5   Court's summary denial of a petition for review of a State Bar Court decision is a

6   "final judicial determination on the merits for purposes of establishing . . . res

7   judicata," and it qualifies as an "adequate opportunity to litigate federal claims");

8   cf. Canatella v. California, 404 F.3d 1106, 1111 (9th Cir. 2005) (although judicial

9   review of the State Bar Court decision by the California Supreme Court "is wholly

10  discretionary, its mere availability provides the requisite opportunity to litigate," for

11  purposes of abstention under Younger v. Harris, 401 U.S. 37 (1971)) (citing Hirsh

12  v. Justs. of Supreme Ct. of State of Cal., 67 F.3d 708, 713 (9th Cir. 1995)).

13       In addition, plaintiff argues that res judicata should not be applied here due to

14  an exception under California law for cases "where injustice would result either

15  because of the effect upon third persons who are not parties to the litigation, or

16  when the public interest requires full litigation."  (Opp. at 22) (citing Louis Stores,

17  Inc. v. Dep't of Alcoholic Beverage Control, 57 Cal. 2d 749, 757-58 (1962)); see

18  also City of Sacramento v. State of California, 50 Cal. 3d 51, 64 (1990) ("[W]hen

19  the issue is a question of law rather than of fact, the prior determination is not

20  conclusive either if injustice would result or if the public interest requires that

21

22       [8](...continued)
23  particularly where, unlike in Eilrich, the affected party raised all his legal challenges in a petition
    for review in the California Supreme Court, which denied review and thereby adopted the
23  administrative tribunal's decision.  See Eilrich, 839 F.2d at 633 (explaining that pursuant to
    Sims, 32 Cal. 3d 468, California gives preclusive effect to administrative agency determinations
24  only if they first satisfy the Utah Construction elements, which include that the parties to the
25  agency proceeding had an "adequate opportunity to litigate" the disputed issues of fact being
    resolved by the agency) (emphasis added) (quoting Utah Constr. Co., 384 U.S. at 422); see also
26  Cal. Rules of Court, Rule 9.16(b) ("Denial of review of a decision of the State Bar Court is a
27  final judicial determination on the merits and the recommendation of the State Bar Court will be
28  filed as an order of the Supreme Court."); RJN Exs. 8-9.

1  relitigation not be foreclosed.") (internal quotation and citation omitted).  However,

2  the public interest exception is an "extremely narrow" one, to be applied only in

3  "exceptional circumstances."  Arcadia Unified Sch. Dist. v. State Dep't of Educ., 2

4  Cal. 4th 251, 259 (1992).  It applies only "if there is a clear and convincing need to

5  relitigate the issue because the [prior] judgment creates a potential adverse impact

6  on the public or persons not parties to the [prior] action."  Acuna v. Regents of

7  Univ. of California, 56 Cal. App. 4th 639, 652 (1997).

8      This exception is inapposite here because applying res judicata in this case

9  will not affect the rights of third parties or the public interest in any significant or

10  non-incidental manner.  See Jerry Beeman & Pharmacy Servs., Inc. v. Anthem

11  Prescription Mgmt., Inc., 2007 WL 8434030, at *4 (C.D. Cal. Aug. 27, 2007)

12  ("Louis Stores does not apply when preclusion will not affect third parties or the

13  public interest . . . .") (citing First N.B.S. Corp. v. Gabrielsen, 179 Cal. App. 3d

14  1189, 1197 (1986)), aff'd, 780 F. App'x 486 (9th Cir. 2019).  Contrary to plaintiff's

15  suggestion, other disabled respondents who are similarly affected by Standard

16  1.6(d) will remain able to assert similar constitutional challenges, including in their

17  own State Bar disciplinary proceedings, in petitions for review in the California

18  Supreme Court, and in petitions for writs of certiorari to the United States Supreme

19  Court.  Applying res judicata in this case also will not preclude such respondents

20  from seeking relief in federal district court, even if such respondents may remain

21  subject to res judicata or other barriers as applied in their respective cases.  Plaintiff

22  fails to demonstrate that any "exceptional circumstances" warrant an exception

23  here.  Accordingly, plaintiff's claims are barred by res judicata.

24      **C.    Dismissal Should Be Without Leave to Amend**

25      As explained above, the First Amended Complaint should be dismissed

26  because plaintiff lacks Article III standing to proceed, and his claims are barred by

27  res judicata.  It is evident that plaintiff cannot cure these deficiencies.  Because

28  further amendment would be futile, the First Amended Complaint should be

21

dismissed without leave to amend and this action should be dismissed.  See Mujica v. AirScan Inc., 771 F.3d 580, 593 & n.8 (9th Cir. 2014) (leave to amend complaint unwarranted where amendment would be futile), cert. denied, 577 U.S. 1049 (2015); Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) ("Because any amendment would be futile, there was no need to prolong the litigation by permitting further amendment.").

V.    **RECOMMENDATION**

        IT THEREFORE IS RECOMMENDED that the District Judge issue an Order:

        1.    approving and accepting this Report and Recommendation;

        2.    granting defendants' Request for Judicial Notice and defendants' Motion pursuant to Rules 12(b)(1) and 12(b)(6);

        3.    dismissing the First Amended Complaint without leave to amend and dismissing this action.

DATED:  December 28, 2021

                                            _____
                                                            /s/

                                            Honorable Jacqueline Chooljian
                                            UNITED STATES MAGISTRATE JUDGE